THOMPSON v DETROIT AUTOMOBILE INTER-INSURANCE
EXCHANGE

Docket No. 67794. Argued May 3, 1983 (Calendar No. 2).—Decided
March 12, 1984.

Francis Thompson and Sarah Thompson brought an action in the
Ingham Circuit Court against the Detroit Automobile Inter-
Insurance Exchange, seeking a judgment declaring that the
defendant was prohibited from setting off from no-fault work-
loss benefits due Francis Thompson as a result of an automobile
accident the amount of social security disability benefits re-
ceived by Sarah Thompson and their dependent children for his
disability. The court, Thomas L. Brown, J., granted the plain-
tiffs' motion for summary judgment. The Court of Appeals,
Bashara, P.J., and T. M. Burns and Beasley, JJ., affirmed
(Docket No. 51436). The defendant appeals.

In opinions by Justice Levin joined by Justice Kavanagh, and
by Justice Ryan joined by Justice Boyle, the Supreme Court
*held:*

Social security disability benefits received by dependents of
an injured wage earner because of the wage earner's disability
are required to be subtracted from no-fault work-loss benefits
otherwise payable for the injury.

Justice Levin wrote:

1. The purpose of social security disability benefits is income
replacement. When paid to dependents, the payments are
calculated on the basis of the history of the injured worker's
earnings, and have the same income-replacement effect as
work-loss benefits provided by the no-fault act. Consistent with
the legislative purpose of reducing the cost of providing no-fault

REFERENCES FOR POINTS IN HEADNOTES

[1-7] 7 Am Jur 2d, Automobile Insurance §§ 361, 368.
[1-4] 70 Am Jur 2d, Social Security and Medicare § 4.
Validity and construction of no-fault insurance plans providing for
reduction of benefits otherwise payable by amounts receivable
from independent collateral sources. 10 ALR4th 996.
[6] 7 Am Jur 2d, Automobile Insurance § 363.
Entitlement of child, spouse, parent, or other person to survivor's
loss benefit under no-fault insurance acts. 12 ALR4th 974.

benefits by subtracting other governmentally mandated payments, the no-fault act requires the subtraction of social security disability payments, even though made directly to dependents, from the work-loss benefits otherwise payable for the injury.

2. Both the no-fault and social security acts embody social welfare programs. No-fault premiums paid by the owners of motor vehicles to no-fault automobile insurers are governmentally mandated exactions that socialize the cost of providing work-loss benefits to all persons injured in automobile accidents, including those who have not contributed, or whose family members have not contributed, by the payment of premiums. The characterization of social security disability benefits to a worker's dependents as a social welfare program does not provide a reason for not subtracting the payments from no-fault work-loss benefits. The social security disability payments to dependents serve to replace loss of income from the disabled worker.

3. Because social security survivors' benefits are required to be set off from no-fault benefits, failure to require setoff of social security disability benefits would have the anomalous result of providing both no-fault and social security benefits while a worker is alive and disabled, but setting off the social security benefits against the no-fault benefits when the worker dies of his injuries. The difference in the labels attached to the social security payments which are substantially identical in amount whether the payment is for disability or death should make no difference. There is no reason to believe that the Congress provided more than income replacement to dependents of a disabled worker while providing only income replacement to the dependents of a deceased worker.

Justice Ryan, joined by Justice Boyle, stated that in this case both no-fault work-loss benefits and social security disability benefits serve the same purpose and are paid as a result of the same accident. It is of no significance, in determining their purpose, that a portion of the social security benefits are paid to a worker's dependents. Each kind of benefit replaces in part the wages lost as a result of the breadwinner's injuries, to assure the family's economic survival. Under the no-fault act, the social security disability benefits must be deducted from no-fault work-loss benefits.

Reversed.

Justice Cavanagh, joined by Chief Justice Williams and Justice Brickley, dissented.

1. Social security disability benefits paid to a worker's family

serve a different purpose than no-fault work-loss benefits paid to the worker. No-fault work-loss benefits replace an injured worker's lost wages without regard to the number of dependents the worker may have. Social security disability benefits are not designed to compensate the wage earner alone, but to provide at least subsistence payments to wage earners and their dependents. Under no-fault, the ultimate beneficiary of work-loss benefits is the injured worker. Social security disability benefits are paid separately to the worker and the spouse and children of the worker. Benefits payable to a dependent child inure directly to the child, and no indices of parental ownership attach to the funds. Benefits payable to the spouse are not payable on the basis of dependency; a spouse who is estranged from the worker is entitled to benefits where the spouse provides care for a dependent child of the worker. No-fault work-loss payments benefit dependents only indirectly, whereas social security disability payments benefit them directly. Although the net effect of both types of benefits generally is to maintain the entire family's standard of living, the "purpose" and the "effect" of each is not synonymous. Only the purpose is to be considered in determining whether benefits are duplicative and thus subject to the setoff provisions of the no-fault act.

2. Social security survivors' benefits, in contrast, are subject to the setoff provisions of the no-fault act because they are intended to provide persons dependent upon a wage earner with protection against economic hardship occasioned by the loss of the wage earner's support. No-fault survivors' benefits also are intended to compensate dependents of a decedent for the support which would have been received had the decedent lived. The fact that the setoff provisions of the no-fault act would be applicable upon the death of an injured worker receiving both work-loss and social security disability benefits does not require setoff while the insured is alive. At the time of the injured worker's death, a different type of benefit is payable, and it is not inconsistent to subject different types of benefit to different treatment. Even though in some instances an injured worker and his family may receive combined benefits in excess of the actual wages lost, government benefits which do not duplicate no-fault benefits cannot be set off under the no-fault act.

107 Mich App 256; 309 NW2d 228 (1981) reversed.

OPINION BY LEVIN, J.

1. INSURANCE — NO-FAULT — SOCIAL SECURITY — DUPLICATION OF
   BENEFITS — SETOFF.

   *No-fault work-loss benefits are intended to replace income lost as
   a result of an inability to perform work because of an injury,
   and to the extent that social security disability benefits serve
   the same purpose as the no-fault benefits and are provided or
   are required to be provided as a result of the same accident, the
   no-fault act requires that they be subtracted from no-fault
   benefits (MCL 500.3107[b], 500.3109[1]; MSA 24.13107[b],
   24.13109[1]).*

2. INSURANCE — NO-FAULT — SOCIAL SECURITY — DUPLICATION OF
   BENEFITS — SETOFF.

   *Social security disability benefits paid to the spouse and children
   of an injured worker have the effect of replacing the income
   lost as a result of the worker's injury, and where social security
   benefits are provided or are required to be provided as a result
   of the same accident, they must be set off from no-fault work-
   loss benefits otherwise payable for the injury (MCL 500.3109[1];
   MSA 24.13109[1]).*

3. INSURANCE — NO-FAULT — SOCIAL SECURITY — DUPLICATION OF
   BENEFITS — SETOFF.

   *The characterization of social security disability benefits as a
   social welfare program is not a reason not to deduct such
   payments from no-fault work-loss benefits; both the no-fault
   and social security acts socialize losses, and the purpose of
   social security disability benefits, like that of no-fault work-loss
   benefits, is income replacement (MCL 500.3109[1]; MSA
   24.13109[1]).*

OPINION BY RYAN, J.

See headnote 2.

DISSENTING OPINION BY CAVANAGH, J.

4. INSURANCE — NO-FAULT — SOCIAL SECURITY — DUPLICATION OF
   BENEFITS.

   *Social security disability benefits paid to dependents of a disabled
   wage earner are not subject to the mandatory setoff provision
   of the no-fault act because those benefits do not duplicate work-
   loss benefits paid to an injured wage earner under the no-fault
   act (42 USC 423; MCL 500.3107[b], 500.3109[1]; MSA
   24.13107[b], 24.13109[1]).*

5. INSURANCE — NO-FAULT — DUPLICATION OF BENEFITS.

*Benefits provided or required to be provided by the laws of any state or the federal government may be subtracted from personal protection insurance benefits otherwise payable for an injury where the other benefits duplicate the personal protection benefits (MCL 500.3107[b], 500.3109[1]; MSA 24.13107[b], 24.13109[1]).*

6. INSURANCE — NO-FAULT — SOCIAL SECURITY — DUPLICATION OF BENEFITS.

*Social security survivors' benefits are subject to the setoff provisions of the no-fault act because they duplicate in considerable degree and purpose the survivors' benefits provided by the no-fault act (42 USC 423; MCL 500.3107[b], 500.3109[1]; MSA 24.13107[b], 24.13109[1]).*

7. INSURANCE — NO-FAULT — DUPLICATION OF BENEFITS.

*The determination whether governmental benefits paid to a worker who is injured in an automobile accident serve the same purpose as no-fault benefits to which the worker is entitled requires a particularized assessment of the governmental benefits to identify the ultimate beneficiary, the nature of the benefits, the reason for paying them, and the events which caused entitlement (MCL 500.3107[b], 500.3109[1]; MSA 24.13107[b], 24.13109[1]).*

*Abood, Abood & Rheaume, P.C.* (by *William E. Rheaume),* for the plaintiffs.

*Gromek, Bendure & Thomas* (by *John A. Lydick)* for the defendant.

LEVIN, J. *(for reversal).* The question presented is whether social security disability benefits that would not be paid to the dependents of a person injured in an automobile accident but for income lost as a result of the accident are required by § 3109(1) of the no-fault automobile liability act to be coordinated with work-loss benefits payable under the no-fault act. We would hold that coordination is required, and that social security disability payments to dependents are required to be subtracted from work-loss benefits.

The purpose of social security disability payments is income replacement. Such payments to dependents are calculated on the basis of the injured worker's prior earnings history, and have the same income-replacement effect as do the work-loss benefits provided by the no-fault act. Consistent with the legislative purpose of reducing the cost of providing no-fault benefits by subtracting other governmentally mandated payments, § 3109(1) requires the subtraction of social security disability payments to dependents from the work-loss benefits otherwise payable for the injury under the no-fault act although they are paid directly to the dependent spouse and children.[1]

## I

On July 13, 1978, Francis Thompson was injured in an automobile accident. Detroit Automobile Inter-Insurance Exchange is the no-fault insurer obligated to pay him work-loss benefits. Francis Thompson also receives social security disability benefits pursuant to 42 USC 423. Thompson's wife Sarah and their two dependent children also receive social security benefits as a result of the disability Thompson suffered in the automobile accident.

Upon learning of the Thompsons' receipt of social security disability payments, DAIIE reduced the monthly amount payable to Thompson by the aggregate amount of social security disability payments made to the Thompson family. Francis Thompson did not challenge DAIIE's reduction for

---

[1] The constitutionality of setting off social security payments, for which the beneficiary has already "paid" through contributions to the social security system, was sustained by this Court in *O'Donnell v State Farm Mutual Automobile Ins Co*, 404 Mich 524; 273 NW2d 829 (1979), *app dis* 444 US 803; 100 S Ct 22; 62 L Ed 2d 16 (1979).

the social security payments made to him, but the Thompsons filed this action seeking a declaratory judgment that DAIIE may not reduce no-fault work-loss payments by the amount of social security disability payments provided to Sarah Thompson and the two Thompson children.

The circuit court granted the Thompsons' motion for summary judgment, and the Court of Appeals affirmed. We would reverse.[2]

## II

Section 3109(1) of the no-fault act provides:

"Benefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from the personal protection insurance payments otherwise payable for the injury."[3]

The subtraction from no-fault work-loss benefits of social security disability benefits paid directly to Francis Thompson, the disabled worker, is not contested. All appear to agree that social security disability benefits, when paid to the injured worker, like the survivors' benefits required to be subtracted in *O'Donnell v State Farm Mutual Automobile Ins Co,* 404 Mich 524; 273 NW2d 829 (1979), *app dis* 444 US 803; 100 S Ct 22; 62 L Ed 2d 16 (1979), and the workers' compensation benefits required to be subtracted in *Mathis v Interstate Motor Freight System,* 408 Mich 164; 289 NW2d

[2] The Thompsons moved for summary judgment on April 9, 1980. The circuit court entered an order on May 9, 1980, granting the Thompsons' motion for summary judgment and prohibiting DAIIE from subtracting social security disability payments to dependents from no-fault work-loss benefits.

The Court of Appeals affirmed. 107 Mich App 256; 309 NW2d 228 (1981).

[3] MCL 500.3109(1); MSA 24.13109(1).

708 (1980), are "benefits" within the meaning of
§ 3109(1). The issue presented is whether social
security disability benefits, when paid to the de-
pendents of the injured worker, are "benefits"
within the meaning of § 3109(1).

Social security disability benefits to dependents
are paid directly to the injured worker's spouse
and children.[4] Under the Social Security Act, a
child only receives disability payments if he is
dependent on the injured worker;[5] any money the
child receives in the form of social security pay-
ments is money he need no longer obtain from the
disabled worker on whom he is dependent. Simi-
larly, disability benefits are payable to a spouse[6]
only when Congress deems it to be difficult for the
spouse to work either because the spouse is 62
years old or has a child in care;[7] any money
received in the form of social security disability
payments is money that need no longer be ob-
tained from the disabled worker.[8]

Before an automobile accident, then, the depen-

---

[4] See dissenting opinion, p 631.

[5] 42 USC 402(d); 20 CFR 404.350(b).

[6] The instant case does not involve disability payments to a hus-
band. The eligibility requirements for social security disability pay-
ments are now identical for wives and husbands, 20 CFR 404.330, and
for divorced wives and divorced husbands, 20 CFR 404.331.

[7] 42 USC 402(b)(1)(B); 20 CFR 404.330.

[8] A divorced spouse only receives disability payments if the spouse
was married to the injured worker for at least 10 years immediately
before the divorce, is not married, and is deemed to have difficulty
working because of being 62 years old. 42 USC 402(b)(1)(C); 20 CFR
404.331. Any money received in the form of social security payments
is money that need no longer be obtained from the disabled worker.

To the extent that a divorced spouse or a child does not receive
alimony or child support payments, or to the extent that disability
payments to dependents exceed alimony or child support payments,
the disability payments might not replace loss of income from work
the injured person would have performed but for the injury. Such
payments might not, to that extent, be required by § 3109(1) to be
subtracted from no-fault work-loss benefits. See *Jarosz v DAIIE*, 418
Mich 565, 592-595; 345 NW2d 563 (1984) (LEVIN, J., *dissenting)*; but
see *Jarosz*, p 592, fn 13 (LEVIN, J., *dissenting)*.

dent child and the spouse who cannot work receive direct support from the worker.[9] The Congress has decided that social security disability benefits should be paid to disabled workers, including those disabled in automobile accidents. Rather than make all the disability payments to the worker and have family members continue to receive all their support from the worker, the Congress has chosen instead to pay a portion of the total benefits in respect to the disability to the disabled worker and the remainder directly to the spouse and the child. Although the Congress has chosen to change the name on the check, disability payments to dependents replace the income that would have inured to the spouse and the child had the worker to whom they look for support not been injured.

Social security disability payments to dependents are calculated on the basis of the disabled worker's past earnings record,[10] and the maximum amount of payments that the family may receive is also based on the earnings history of the disabled worker.[11] If these payments were to have some purpose other than replacing the injured worker's lost income, that purpose would not be served by tying disability payments to dependents to the past earnings record of the disabled worker.

___

[9] The United States Supreme Court has observed that "the categories of secondary beneficiaries were defined to include persons *who were presumed to be dependent on the wage earner* at the time of his death, disability, or retirement." *Califano v Jobst,* 434 US 47, 50; 98 S Ct 95; 54 L Ed 2d 228 (1977) (emphasis added).

The dissenting opinion, in referring to these payments as "social security *dependents'* benefits", *post,* p 627 (emphasis added), implicitly recognizes that the social security disability payments at issue in the instant case are paid to persons who are dependent on the wage earner, and that therefore any social security payments made to these beneficiaries replace income previously payable by the now disabled wage earner. See also *Social Security Explained* (CCH, 1983), § 511, p 184.

[10] 42 USC 402, 415; 20 CFR 404.333, 404.353.

[11] 42 USC 403, 415; 20 CFR 404.403.

At the time this Court decided *Mathis v Inter-state Motor Freight System, supra,* the workers' compensation act provided that payments made to the injured worker were to vary with the number of dependents.[12] Augmented workers' compensation payments provided to the worker because of his dependents were required to be subtracted under the rule stated in *Mathis.* Similarly, social security disability payments provided directly to the dependents themselves should be subtracted. The name on the check should not be determinative. "To refuse the setoff directed by the [no-fault act] would result in the injured claimant receiving more as lost earnings than the actual wages lost, a gift not intended by the Legislature when it enacted no-fault legislation". *Karmilowicz v Allstate Ins Co,* 77 AD2d 131, 135; 432 NYS2d 698 (1980), *app dis* 54 NY2d 753 (1981).[13]

### III

The dissenting opinion acknowledges that social security disability payments, like no-fault work-loss benefits, provide "income insurance protec-

---

[12] See 1980 PA 357, MCL 418.361; MSA 17.237(361).

[13] We have not found a case addressing this question other than *Karmilowicz.* As noted in the text, the New York court in *Karmilowicz* held that social security disability payments to dependents must be subtracted from no-fault work-loss benefits otherwise payable to the injured worker.

Plaintiffs contend that *Karmilowicz* held nothing more than that an arbitrator had erred in refusing to subtract the disability payments since such a deduction was required under an applicable administrative regulation, and that *Karmilowicz* is therefore inapplicable here because Michigan has no such administrative regulation. This argument is not persuasive. If the court had concluded that the no-fault act did not require this setoff, it probably should have declared the regulation void as inconsistent with the governing statute. Subsequently, the validity of this regulation under the no-fault statute was upheld in *Ardolino v City of New York,* 94 AD2d 780; 463 NYS2d 26 (1983).

tion".[14] The opinion argues, however, that the social security disability program is also, "to a certain extent, a social welfare program designed to provide at least subsistence payments to disabled workers as well as to their dependents".[15]

## A

The United States Supreme Court has said that in providing for the payment of social security benefits to dependents the Congress "intended to provide persons dependent on the wage earner with protection against the economic hardship occasioned by loss of the wage earner's support". *Califano v Jobst,* 434 US 47, 50; 98 S Ct 95; 54 L Ed 2d 228 (1977).[16] The dissenting opinion does not explain what purpose social security disability payments to dependents serve other than replacing the lost wages of the disabled person,[17] or why

---

[14] *Post,* p 631.

[15] *Post,* p 631.

[16] See also *Mathews v De Castro,* 429 US 181, 185-186; 97 S Ct 431; 50 L Ed 2d 389 (1976), where the United States Supreme Court stated that the "primary objective" of social security disability payments "was to provide workers *and their families* with basic protection against hardships *created by the loss of earnings* due to illness". The Court also noted that the social security "insurance programs are contributory in nature and are designed to prevent public dependency by protecting workers *and their families* against common economic hazards". *Id.,* p 186, fn 6. (Emphasis added.)

[17] In *Jarosz v DAIIE,* 418 Mich 565, 580; 345 NW2d 563 (1984), this Court states:

"In every case, in order to determine whether the governmental and no-fault benefits serve the same purpose (criterion 1), a particularized assessment of the questioned governmental benefit is necessary to identify the ultimate beneficiary, the nature of the benefits, the reason for paying them, and the events triggering entitlement to them."

All four of the criterion 1 factors stated in *Jarosz* suggest that social security disability payments to dependents serve the same purpose as work-loss benefits paid under the no-fault act.

First, the ultimate beneficiaries of both payments are the dependents of an injured worker. Second, the nature of both payments is a substitution for income lost as a result of a worker's accident. Third,

subsistence payments to the worker's dependents should not be subtracted when subsistence payments to the disabled worker himself are required by § 3109(1) to be subtracted from work-loss benefits. It does not appear that social security disability payments to dependents serve any purpose other than replacing the lost wages of the disabled worker.

This Court has held, despite the "social welfare" component that inheres in social security survivors' payments,[18] that survivors' payments are required by § 3109(1) to be subtracted from no-fault work-loss benefits. *O'Donnell v State Farm Mutual Automobile Ins Co, supra.* The failure to require a setoff of social security disability payments to dependents would yield the anomalous result that the payments to dependents are not subtracted as long as the injured worker is alive and disabled, but are subtracted under the rule of *O'Donnell, supra,* when the injured worker dies from his injuries.

The dissenting opinion asserts that this result is not anomalous because "[a]t the time of the injured worker's death, a different type of benefit is payable, and it is not inconsistent to subject the benefit to a different treatment."[19] Yet it is but a truism that a different type of payment is made when the worker is disabled than when the worker

---

both payments are made because a loss of income from work has resulted from a worker's accident. Finally, disability caused by the same automobile accident triggers entitlement to both the no-fault work-loss benefits and the social security disability payments to dependents.

The dissenting opinion recognizes that the second criterion of the *Jarosz* test is also satisfied because the social security disability payments to dependents are provided as a result of the same accident. *Post,* p 628.

[18] See *Weinberger v Wiesenfeld,* 420 US 636, 647; 95 S Ct 1225; 43 L Ed 2d 514 (1975).

[19] *Post,* p 633.

dies; in the former case the social security program pays disability benefits, while in the latter the social security program pays survivors' benefits. This does not explain why the different labels attached to the social security payments—substantially identical in amount whether the payment is for disability or death—[20]should make a difference. No evidence has been offered and there is no reason to believe that the Congress provided more than income replacement to the dependents of a disabled worker while providing only income replacement to the dependents of a deceased worker.

## B

The social welfare program argument ignores that the no-fault act also embodies a social welfare program. Although the no-fault system is administered through insurance companies, premiums paid by the owners of motor vehicles to no-fault automobile insurers are governmentally mandated exactions that socialize the cost of providing work-loss benefits and medical payments to *all* persons injured in automobile accidents.

No-fault benefits for work loss and medical expense in respect to automobile accidents are payable although the injured person does not own (and no family member in the same household owns) an automobile, and thus although the injured person has not contributed (and no family member has contributed) to the no-fault system.[21] Even if the injured person owns a motor vehicle and has not contributed to the no-fault system by insuring the vehicle, no-fault benefits are payable to him if he is injured in an accident not involving

---

[20] See *Social Security Explained,* fn 9 *supra,* § 509.4, p 166.

[21] MCL 500.3114; MSA 24.13114 and MCL 500.3115; MSA 24.13115.

the vehicle.[22] Benefits are payable although the injured person is entirely at fault, and the person who paid premiums to the insurer (responsible under the act's priority provisions for the payment of no-fault benefits) is blameless.[23]

The workers' compensation act has frequently been referred to as the first, or one of the first, social welfare programs. That social welfare program is also largely administered through insurance companies and funded with insurance premiums. There, too, there is a trade-off of a cause of action in tort for benefits payable without regard to fault. Benefits under both programs are specified by statute, and premiums are expected to be determined on the basis of the insurer's loss experience.

The no-fault automobile liability act actually goes further than the workers' compensation act in socializing losses. There is no cap on recoverable medical expense, and the maximum work-loss benefit is considerably higher than the maximum workers' compensation benefit.[24] No-fault benefits are payable when there is no insurance; this is accomplished through the assigned claims facility, which provides benefits when an owner or driver is not insured or cannot be identified. That facility provides a means of requiring persons who in fact contribute to the no-fault system to pay for those who do not, and functions like the Second Injury Fund by assessing all automobile insurers for the cost.[25] Employees of an uninsured employer do not

---

[22] *Heard v State Farm Mutual Automobile Ins Co,* 414 Mich 139; 324 NW2d 1 (1982).

[23] MCL 500.3105; MSA 24.13105.

[24] MCL 500.3107; MSA 24.13107. As of October 1, 1983, the ceiling on no-fault work-loss benefits is $2,252 per month for three years.

[25] MCL 500.3171 *et seq.;* MSA 24.13171 *et seq.*

have similar protection under the workers' compensation act.[26]

An employer can seek to reduce his workers' compensation premium cost by exercising care and reducing accidents. The most careful automobile owner must, however, pay premiums for losses caused by careless drivers who may collide with him or his automobile or a family member in the same household, and for losses caused by uninsured and unidentified drivers. Owners who have one household member and those who have many household members who do not generally drive the owner's automobile pay essentially the same no-fault insurance premiums.

No-fault premiums, then, like social security taxes, do not reflect only the cost expected to be imposed on the system by the person making the payment, but include amounts for costs expected to be imposed on the system by persons who do not contribute thereto or do so in amounts inadequate to provide the benefits they receive. Under the Social Security Act, survivors', retirement, and disability benefits are not payable unless the person claiming the benefit or person upon whom he is dependent contributed to the social security program,[27] but there is no such limitation in the no-fault act.[28]

The no-fault automobile liability act may thus provide the most comprehensive and generous "social welfare program" yet enacted.

## IV

In sum, the coordination provision of the no-

---

[26] See *Perez v State Farm Mutual Automobile Ins Co*, 418 Mich 634; 344 NW2d 773 (1984).

[27] See *Social Security Explained*, fn 9 *supra*, § 102, pp 27, 28.

[28] See fn 21.

fault act requires that there be subtracted from no-fault work-loss benefits the amount of social security disability benefits payable to dependents of the injured person.

The decision of the Court of Appeals is reversed.

Kavanagh, J., concurred with Levin, J.

Ryan, J. (for reversal). In *Jarosz v DAIIE,* 418 Mich 565, 577; 345 NW2d 563 (1984), we held that the criteria for determining whether governmental benefits "provided or required to be provided" must be deducted from no-fault work-loss benefits are:

1) Whether they serve the same purpose as the no-fault benefit, and

2) Whether they are provided or are required to be provided as a result of the same accident.

In this case, the no-fault work-loss benefits and the social security disability payments are both intended to relieve Mr. Thompson and his family of the economic hardship which would result from his inability because of his injuries to earn wages to support himself and his family.[1] In addition, the event which triggered entitlement to both categories of benefits is the automobile accident which resulted in Mr. Thompson's incapacity. Both sets of benefits serve the same purpose and are paid as the result of the same income-impairing event, the auto accident. It is of no significance, for purposes

---

[1] As Justice Cavanagh notes in his opinion, the purpose of work-loss benefit payments is to replace the lost wages of the injured insured. *Post,* p 631. The United States Supreme Court in *Mathews v De Castro,* 429 US 181, 186, fn 6; 97 S Ct 431; 50 L Ed 2d 389 (1976), stated the purpose of social security disability payments as follows:

"The insurance programs are contributory in nature and are designed to prevent public dependency by protecting workers and their families against common economic hazards."

Therefore, the purposes of the two payments are the same.

of determining the *purpose* of the social security disability benefits, that a portion of them are paid directly to Mr. Thompson's dependents. The reason they are paid is to replace, at least in part, the wages which have been lost as a result of the breadwinner's injuries and thus to assure the family's economic survival.

Since both sets of benefits serve the same purpose and are paid as a result of the same income-reducing event, the auto accident, they meet the test for the § 3109(1) setoff we laid down in *Jarosz, supra.*

I join, therefore, in the judgment to reverse the decision of the Court of Appeals.

BOYLE, J., concurred with RYAN, J.

CAVANAGH, J. *(dissenting).* Plaintiff Francis Thompson, while insured by the defendant, was injured in an automobile accident, which resulted in a disability preventing him from returning to work. As a result, he receives work-income loss benefits under the no-fault insurance act, MCL 500.3107(b); MSA 24.13107(b), as well as social security disability insurance benefits under the Social Security Act, 42 USC 423. In addition, his wife, plaintiff Sarah Thompson, and their two dependent children receive social security insurance benefits based upon his disability.

In computing the benefits owed to Francis Thompson under the no-fault act, the defendant reduced the monthly amount payable to him by the total amount of monthly social security payments made to each member of his family. Defendant claimed that its right to such a setoff exists under MCL 500.3109(1); MSA 24.13109(1).

Plaintiffs filed suit against the defendant con-

testing the setoff of the social security benefits paid to Sarah Thompson and their two children; the setoff as to Francis Thompson's benefits is not in dispute. Plaintiffs moved for summary judgment, requesting that the defendant be prohibited from setting off the social security dependents' benefits. The circuit court granted the plaintiffs' motion, and the Court of Appeals affirmed. 107 Mich App 256; 309 NW2d 228 (1981). We granted the defendant's application for leave to appeal in order to consider whether § 3109(1) of the no-fault act permits the defendant to set off social security dependents' benefits from work-income loss benefits payable under the act. 414 Mich 873 (1982).

Section 3107 of the no-fault act provides for the payment of benefits to cover loss of income suffered by an injured person insured under the act. This controversy centers on an interpretation of § 3109(1) of the act, which states:

"Benefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from the personal protection insurance benefits otherwise payable for the injury." MCL 500.3109(1); MSA 24.13109(1).

In *O'Donnell v State Farm Mutual Automobile Ins Co,* 404 Mich 524; 273 NW2d 829 (1979), we were asked to determine whether § 3109(1) requires a setoff of social security survivors' benefits from the survivors' receipt of benefits under the no-fault act. We concluded that § 3109(1) requires a setoff of social security survivors' benefits when those benefits are paid as a result of the same accident which entitles the survivors of the insured decedent to benefits under the no-fault act because the governmental benefits duplicated in varying degrees the no-fault benefits also due.

*O'Donnell,* p 538. We reached this conclusion on the basis that:

"The history of § 3109(1) indicates that the Legislature's intent was to require a set-off of those government benefits that duplicated the no-fault benefits payable because of the accident and thereby reduce or contain the cost of basic insurance." *O'Donnell,* p 544.

In a case similar to the one before us now, we were asked to decide whether under § 3109(1) the defendant could deduct from no-fault wage-loss benefits otherwise due a portion of the social security old-age benefits being received by the plaintiff. *Jarosz v DAIIE,* 418 Mich 565; 345 NW2d 563 (1984). We held that the applicable test regarding whether governmental benefits provided or required to be provided must be deducted from no-fault benefits under § 3109(1) is whether the governmental benefits:

"1) Serve the same purpose as the no-fault benefits, and
"2) Are provided or are required to be provided as a result of the same accident." *Jarosz,* p 577.

Thus, the key to determining whether § 3109(1) requires a setoff of social security disability benefits for dependents from those benefits payable under the no-fault act is whether the social security benefits are payable as a result of the same accident and whether they are duplicative, *i.e.,* whether they serve the same purpose as the no-fault benefits. In this case the social security benefits were payable as a result of the same accident so we turn our attention to the question of whether they serve the same purpose as the no-fault benefits due.

Defendant argues that all social security payments, whether made for the death, disability, or retirement of the insured, serve substantially the same purpose, *i.e.,* to protect the insured and the insured's dependents against the hardship of a loss of wage-earning support, and therefore that all such benefits should be subject to a setoff from any no-fault benefits due. Defendant further argues that, on the basis of our holding in *O'Donnell,* if Francis Thompson were to die from the injuries he received in his accident, the social security survivors' benefits to which his dependents would be entitled would reduce the no-fault benefits payable to them pursuant to the setoff provision of § 3109(1) and that, therefore, it would be illogical for us to hold that the predecessor of such survivors' benefits is not likewise set off from any no-fault benefits.

Plaintiffs counter that the social security disability benefits payable to a spouse or child of the wage earner are not duplicated in any form, to any degree, by any no-fault benefits and that therefore no deductions should be permitted from the wage benefits payable under the no-fault act. The no-fault benefits for which the defendant is responsible are payable only to Francis Thompson because the injured wage earner is the only person who qualifies for work-income loss benefits under § 3107(b). The amount of these benefits is determined solely on the basis of the injured worker's insurance coverage and wages; the amount of benefits is not affected by the worker's marital status or the number of dependent children.

The Court of Appeals agreed with the plaintiffs that the mandatory setoff provision of § 3109(1) is inapplicable because there is no duplication of benefits. The Court concluded that the purpose in

providing work-income loss benefits to the insured under the no-fault act is not the same as that in paying social security disability benefits to the insured's spouse or children.

*Jarosz,* p 580, sets forth a four-point test to determine whether particular governmental benefits serve the same purpose as no-fault benefits:

"In every case, in order to determine whether the governmental and no-fault benefits serve the same purpose (criterion 1), a particularized assessment of the questioned governmental benefit is necessary to identify the ultimate beneficiary, the nature of the benefits, the reason for paying them, and the events triggering entitlement to them."

We acknowledge that the nature of both benefits is the replacement of lost income and support. In addition, the triggering event is the same. However, analysis of the remaining points reveals that social security disability benefits paid to the worker's family serve a different purpose than no-fault work-loss benefits paid to the worker and are therefore not subject to setoff under § 3109(1).

As to the ultimate beneficiary, our brothers RYAN and LEVIN believe that the injured worker and the worker's family are the ultimate beneficiaries of both benefits. We disagree. No-fault benefits are paid only to the disabled worker. In contrast, social security disability benefits are paid separately both to the worker and to the dependent children and spouse of the worker. Benefits payable to a dependent child inure directly to the child despite the requirement of dependency status; no indices of parental ownership ever attach to such funds. See *Mask v Mask,* 95 NM 229; 620 P2d 883 (1980), and *Fuller v Fuller,* 49 Ohio App 2d 223; 360 NE2d 357 (1976). Benefits payable to

the wage earner's spouse are not payable on the basis of dependency; a spouse who is separated or divorced from the wage earner is entitled to benefits if the spouse provides care for any dependent child of the disabled worker. 42 USC 402(b).

Unlike Justice LEVIN, we attach some significance to the fact that Congress purposely chose to pay a portion of the social security disability benefits to the worker and the remainder directly to the spouse and dependents, rather than making all payments to the worker. The wisdom of this division of payment is particularly evident where the worker and the worker's spouse are estranged or divorced and child support is not regularly provided by the worker. No-fault payments benefit dependents only indirectly, whereas disability payments benefit them directly.

The reasons for paying no-fault work-loss and social security disability benefits are also different. Work-loss benefits are provided to an injured insured worker to replace lost wages, subject to the limitations in § 3107(b). These benefits are not based upon the number of the insured worker's dependents. Section 3107(b) basically provides simple income insurance protection, which requires benefits to be computed to compensate the insured worker approximately dollar for dollar for the amount of wages lost because of the worker's injury or disability. No benefits are payable to the worker's dependents.

On the other hand, social security disability payments are based upon a more complex premise, including both income insurance protection and, to a certain extent, a social welfare program designed to provide at least subsistence payments to disabled workers as well as to their dependents. *Weinberger v Wiesenfeld*, 420 US 636, 647; 95 S Ct

1225; 43 L Ed 2d 514 (1975). Social security disability benefits are not designed to compensate the wage earner alone as are benefits payable under the no-fault act. Disability benefits paid to the wage earner's family have no comparable counterpart under the no-fault act.

Assuming that no-fault is also a social welfare program, it is a social welfare program vis-à-vis the injured worker only. Although the net effect of both work-loss and disability payments is generally to maintain the entire family's standard of living, the "purpose" and "effect" of particular benefits are not synonymous. Only the former must be considered in determining whether benefits are duplicative and subject to setoff under § 3109(1). *Jarosz, supra,* fn 9.

Our holding that social security disability benefits paid to the worker's family are not subject to the mandatory setoff provision in § 3109(1) does not conflict with our holding in *O'Donnell* that social security survivors' benefits are subject to such a setoff. As we noted in *O'Donnell, supra,* p 546, social security survivors' benefits are intended to provide persons dependent upon the wage earner with protection against the economic hardship occasioned by the loss of the wage earner's support. Survivors' benefits payable under § 3108 of the no-fault act are also intended to compensate the dependents of the deceased for the support they would have received during their dependency had the injured worker not suffered the accidental bodily injury causing death. MCL 500.3108; MSA 24.13108. Since the social security survivors' benefits duplicate in considerable degree and purpose the survivors' benefits provided for under the no-fault act, the setoff provision of § 3109(1) is applicable.

However, disability benefits under the Social Security Act and the no-fault act do not serve the same purpose as do survivors' benefits under both acts. Furthermore, unlike survivors' benefits, social security disability benefits to a worker's dependent children or spouse do not duplicate in any degree disability benefits payable to the worker under the no-fault act. Therefore, it is entirely rational to treat these two types of benefits differently under § 3109(1). The fact that § 3109(1) would become applicable should the injured worker subsequently die because of an injury does not change this. At the time of the injured worker's death, a different type of benefit is payable, and it is not inconsistent to subject the benefit to a different treatment.

Although in some instances an injured worker and his family may receive more from no-fault and disability payments than the actual wages lost, benefits which do not duplicate no-fault benefits cannot be set off under § 3109(1). The family's better financial position has no relation to the determination of whether the benefits duplicate one another. *Jarosz, supra,* fn 10.

The judgment of the Court of Appeals should be affirmed. Appellees should be permitted to tax costs.

WILLIAMS, C.J., and BRICKLEY, J., concurred with CAVANAGH, J.