OWENS v AUTO CLUB INSURANCE ASSOCIATION

Docket Nos. 94544-94546. Argued April 2, 1993 (Calendar No. 13). Decided September 29, 1993.

Joyce E. and Richard L. Owens, for themselves, and as guardians of Kenneth M. Owens, a legally incapacitated person, brought an action in the Wayne Circuit Court against the Auto Club Insurance Association, Kenneth Owens' no-fault insurer for certain medical expenses incurred after June 1984 as a result of injuries received by him in an automobile accident in December 1982. The policy provided for coordination with other health coverage. At the time of the accident, Kenneth was a member of the Coast Guard, and the Coast Guard and the Veterans Administration paid his medical expenses until his discharge in June of 1984. Both the VA and the ACIA refused payment for subsequent medical expenses. The court, John H. Gillis, J., granted partial summary disposition for the plaintiffs respecting expenses incurred for rehabilitation and outpatient care, and for work loss benefits. The Court of Appeals, D. E. HOLBROOK, JR., P.J., and MURPHY and JANSEN, JJ., affirmed in part and reversed in part in an unpublished opinion per curiam (Docket Nos. 110442, 110443, 111599). ACIA appeals.

In an opinion by Justice LEVIN, joined by Chief Justice CAVANAGH, and Justices GRIFFIN and MALLETT, the Supreme Court *held:*

The no-fault insurer of a person injured in an automobile accident, whose policy is coordinated pursuant to MCL 500.3109a; MSA 24.13109(1) with other health coverage provided by United States military forces or the Veterans Administration, is not liable for medical expense that the military or the VA is required to pay or provide under other health coverage.

1. The legislative purpose that led to the enactment of § 3109a requires that an insured who chooses to coordinate no-

REFERENCES

Am Jur 2d, Automobile Insurance §§ 359, 368.

Validity and construction of no-fault insurance plans providing for reduction of benefits otherwise payable by amounts receivable from independent collateral sources. 10 ALR4th 996.

fault coverage with health care coverage provided by the military forces or the Veterans Administration obtain payment and services from such a health care provider to the extent of the available health coverage. In this case, when Kenneth Owens chose to coordinate, he agreed in effect to avail himself of health care coverage provided by the military forces or the Veterans Administration.

2. The no-fault act requires a no-fault insurer to pay benefits for allowable expenses, consisting of all reasonable charges incurred for reasonably necessary products, services, and accommodations for an injured person's care, recovery, or rehabilitation. The plaintiffs showed that the rehabilitation services were allowable expenses and were reasonably necessary, and also that efforts were made to obtain them from the Veterans Administration. The VA did not identify a Veterans Administration facility where such inpatient care could be provided. However, the plaintiffs did not establish the need for the duration of rehabilitation, and, thus, there was a genuine issue of material fact whether it was reasonably necessary for Kenneth Owens to receive rehabilitation from June 1983 through June 1985.

3. The plaintiffs did not offer evidence that outpatient services provided to Kenneth Owens were allowable expenses incurred for reasonably necessary services. While the ACIA conceded that the services were reasonably necessary, the plaintiffs failed to establish that Owens sought to obtain such services from the Veterans Administration; thus, summary disposition should not have been entered.

4. Social security disability benefits are government benefits under § 3109(1), rather than other health and accident coverage within the meaning of § 3109a. The ACIA therefore is entitled to set off social security disability benefits against no-fault wage loss benefits. Because the total of the social security disability benefits paid to Kenneth Owens exceeded the amount of work loss benefits otherwise due him, the ACIA has no obligation to pay work loss benefits.

Affirmed in part, reversed in part, and remanded.

Justice BOYLE, joined by Justices BRICKLEY and RILEY, dissenting, stated that the rationale expressed by the majority may perpetuate litigation regarding the scope of no-fault coverage, the conditions under which coordination might be appropriate, and the extent to which § 3109(1) has any continued viability.

The ACIA may reduce its liability to pay the plaintiff's medical benefits to the extent that federal law requires they be

provided by another source. Because federal law requires that veterans be entitled to treatment at a Veterans Administration facility and the medical care provided by the VA serves the same purpose as no-fault medical benefits and was received as a result of the same accident, the ACIA may subtract the value of the treatment directly available at a VA facility from medical benefits otherwise payable. However, medical care contracted by the VA in a private facility is not a benefit required to be provided within the meaning of § 3109(1), and need not be subtracted unless the care was authorized by the VA and the insured opted not to be treated at the authorized contract facility. In this case, both social security and VA disability benefits must be subtracted from the work loss benefits because they were provided pursuant to federal law and were payable as a result of the same accident.

INSURANCE — NO-FAULT — COORDINATION OF BENEFITS — MILITARY FORCES — VETERANS ADMINISTRATION.

The no-fault insurer of a person injured in an automobile accident, whose policy is coordinated with other health coverage provided by United States military forces or the Veterans Administration, is not liable for medical expense that the military or the VA is required to pay or provide under other health coverage unless those providers fail to provide appropriate medical care or to reimburse the insured for the expense (MCL 500.3109a; MSA 24.13109[1]).

*Law Offices of Wayne J. Miller, P.C.* (by *Wayne J. Miller*), for the plaintiffs.

*Feikens, Foster & Vander Male* (by *Lee A. Stevens* and *Walter V. Bernard III*) for the intervening plaintiffs.

*Brandt, Hanlon, Becker, Lanctot, McCutcheon, Schoolmaster & Taylor* (by *David J. Lanctot*) and *Scarfone & Geen* (by *John B. Geen*); *Gross & Nemeth,* of counsel (by *Mary T. Nemeth*), for the defendant.

Amicus Curiae:

*Bender & Sitner, P.C.* (by *Steven B. Bender* and

*Scott D. Sitner*), for Michigan Head Injury Alliance.

LEVIN, J. Today, in *Tousignant v Allstate Ins Co,* 444 Mich 301; 506 NW2d 844 (1993), we considered the liability of a no-fault automobile insurer when the insured purchases a policy of no-fault automobile insurance coordinated pursuant to § 3109a of the no-fault automobile liability act with other "health . . . coverage."[1] We there hold that a no-fault insurer is not subject to liability for medical expense that the insured's health care provider— the Health Alliance Plan, a health maintenance organization—is required to pay for or provide.[2]

A

In the instant case, as in *Tousignant,* the applicable no-fault automobile insurance was coordinated with other health coverage. In *Tousignant,* the "health coverage" was through a health care provider, an HMO. In the instant case, the health coverage was provided by the United States Coast Guard and the Veterans Administration.

The Veterans Administration, like the HMO in *Tousignant,* is a health care provider. It does not appear whether the United States Coast Guard employs physicians or has health care facilities.

[1] An insurer providing personal protection insurance benefits shall offer, at appropriately reduced premium rates, deductibles and exclusions reasonably related to *other health and accident coverage* on the insured. The deductibles and exclusions required to be offered by this section shall be subject to prior approval by the commissioner and shall apply only to benefits payable to the person named in the policy, the spouse of the insured and any relative of either domiciled in the same household. [MCL 500.3109a; MSA 24.13109(1). Emphasis added.]

[2] We added, "We do not address the issues that might arise were a health insurer to fail to pay or reimburse an insured for the expense or, in the case of a health insurer who is also a provider, fail to provide medical care."

Plaintiff, Kenneth M. Owens, was injured in an automobile accident in December, 1982. The Coast Guard paid or caused to be paid the expense of providing health care to Owens until he was officially discharged from the Coast Guard in June, 1984. There is thus no issue concerning payment of medical expense, either at private or governmental hospitals, between the time of the accident and the date that Owens was discharged from the Coast Guard. Accordingly, there is no issue concerning payment of the expense incurred at the facilities of intervening plaintiff Herrick Memorial Hospital and Herrick Memorial Nursing Home between July 1, 1983, when Owens was discharged from the Ann Arbor Veterans Administration facility, and June, 1984, when the Coast Guard ceased payment.

This litigation concerns whether Automobile Club Insurance Association, Owens' no-fault insurer, is subject to liability for medical expense incurred by Owens after he was discharged from the Coast Guard. Both the Veterans Administration and the ACIA have refused to pay inpatient medical expense incurred at Herrick after Owens' discharge from the Coast Guard, and have also refused to pay outpatient medical expense incurred at Saline Community Hospital incurred after Owens was discharged from Herrick.

B

We hold that where the injured person,[3] Owens,

[3] Kenneth M. Owens was the insured under a policy issued by the ACIA.

Where the insured coordinates no-fault automobile insurance with other health coverage, coordination applies to benefits payable to the insured, the spouse of the insured, and any relative of either domiciled in the same household, as set forth in § 3109a of the no-fault automobile liability act. See n 1 for text.

is covered by a policy of no-fault automobile insurance, coordinated pursuant to § 3109a with other health coverage provided by United States military forces or the Veterans Administration, the no-fault insurer is not subject to liability for medical expense that the military forces or the Veterans Administration is required, under the other health coverage, to pay for or provide.[4]

I

While Owens was on authorized leave, visiting his parents, he struck a tree while driving his motor vehicle and suffered serious permanent injury, including brain damage. The health coverage with which his no-fault policy was coordinated was provided pursuant to federal law by the United States Coast Guard and the Veterans Administration in consequence of his employment.

Owens was in a coma for a number of weeks. He was given emergency treatment at St. Joseph Hospital, and then transferred to Walter Reed Veterans Hospital in February, 1983, and remained there until April, 1983. He then was transferred to a Veterans Administration hospital in Ann Arbor in April, 1983, and remained there until July, 1983.

Plaintiffs Joyce E. and Richard L. Owens are the parents and guardians of Kenneth Owens. In July, 1983, they authorized the transfer of their son to Herrick Hospital in Tecumseh, Michigan, for rehabilitation purposes, as suggested by a Veterans Administration neurologist. Owens remained at Herrick for almost two years, until June, 1985.

The Coast Guard, as previously indicated, paid the medical expense incurred at Herrick until Owens was discharged in June, 1984. This action

[4] See n 2.

was commenced on June 18, 1984, shortly after the discharge. The bill at Herrick for the period June, 1984, through June, 1985, was approximately $110,000. The Veterans Administration and the ACIA each refused to pay for continued care at Herrick. Herrick was ultimately allowed to intervene in this action.

After Owens was discharged from Herrick in June, 1985, he returned to his parents' home and received outpatient care at Saline Community Hospital incurring expenses of approximately $70,000. Neither the Veterans Administration nor the ACIA have been willing to pay for those expenses.

Owens began receiving social security disability benefits in June, 1983, and, following his discharge from the Coast Guard, Veterans Administration disability benefits beginning in July, 1984. The no-fault policy was not coordinated with respect to work loss benefits.

The circuit court entered summary disposition in favor of Owens respecting the medical expense incurred at Herrick and Saline, and for work loss benefits. The court also awarded Owens attorney fees and interest under the no-fault act.

The Court of Appeals affirmed in part, but reversed with respect to Herrick on the basis that there is a question of fact whether all the inpatient care at Herrick was necessary.[5]

II

Owens contends, as did Tousignant, that coordination does not require that a no-fault insured seek all medical care from the health insurer. We conclude, however, for the reasons stated in

[5] Unpublished opinion per curiam, decided February 5, 1992 (Docket Nos. 110442, 110443, 111599).

*Tousignant,*[6] that the legislative purpose that led to the enactment of § 3109a requires that an insured, who chooses to coordinate no-fault coverage with health care coverage provided by the military forces or the Veterans Administration, obtain payment and services from such a health care provider to the extent of the available health coverage.[7]

Owens, when he chose to coordinate, agreed in effect to avail himself of health care coverage provided by the military forces or the Veterans Administration.

### III

The ACIA contends that the health coverage provided by the United States Coast Guard and the Veterans Administration are benefits provided or required to be provided under the laws of the federal government within the meaning of

---

[6] When the military forces or the Veterans Administration provides health care services, it functions much as does an HMO. Choice of physician and facility is limited. The scope and quality of the service may vary from that provided in the private sector. But to the extent that appropriate services are provided, such health coverage is "other health coverage" within the meaning of § 3109a.

[7] The ACIA policy provides:

> If the Declaration Certificate shows Coordinated Medical Benefits, sums paid or payable to or for you or any relative shall be reduced by any amount paid or payable under any valid and collectible; individual, blanket or group disability or hospitalization insurance; medical, surgical or hospital direct pay or reimbursement health care plan; Workers Compensation Law, disability law of a similar nature, or any other state or federal law; or car or premises insurance affording medical expense benefits.

Section 3109a states that the coordination of benefits shall apply to "benefits payable." The Allstate Insurance Company policy in *Tousignant* spoke of benefits "paid, payable or required to be provided." *Id.*, p 304, n 5. In *Tousignant, supra,* p 312, we said, citing *Perez v State Farm Mutual Automobile Ins Co,* 418 Mich 634, 647, n 19; 344 NW2d 773 (1984), "[t]he words 'payable' and 'required to be provided' are 'functionally equivalent.' "

§ 3109(1),[8] and on that basis are to be subtracted from the medical expense benefits otherwise payable by a no-fault insurer.

Because we hold that, when Owens chose to coordinate pursuant to § 3109a, he agreed to avail himself of health coverage provided by the military forces or the Veterans Administration, there is no need to consider the ACIA's arguments concerning the applicability of § 3109(1) of the no-fault act.

The ACIA urges that *Morgan v Citizens Ins Co of America,* 432 Mich 640, 648; 442 NW2d 626 (1989), should be reconsidered.[9] In *Morgan,* however, the insured had declined to coordinate his no-fault medical coverage with other health coverage. The issue there presented cannot properly be reconsidered except in a case where, in contrast with the

_____

[8]  Benefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from the personal protection insurance benefits otherwise payable for the injury. [MCL 500.3109(1); MSA 24.13109(1).]

[9] In *Morgan,* p 646, we agreed with the no-fault insurer that Morgan "did not have the option under the no-fault act of choosing 'which insurance would' pay his medical expense," and that "[i]f federal law obliged the federal government to *pay or reimburse* Morgan for the expense of his medical treatment in a nonmilitary hospital," (emphasis added) the no-fault insurer was not, by reason of § 3109(1), obliged to do so.

The issue in *Morgan* did not concern "payment" to or "reimbursement" for Morgan by the military for medical treatment in a nonmilitary hospital, but rather whether Morgan was precluded from seeking payment from the no-fault insurer of expense incurred in a nonmilitary hospital because he could have had a surgical procedure performed in a military hospital. This Court said:

A surgical procedure performed in a military hospital may not, because of differences in quality and service, be duplicative of the medical service that an injured person could obtain and pay for with the no-fault medical expense benefit through the exercise of the choice in medical service providers preserved to injured persons under the no-fault act. [*Id.,* p 648.]

instant case,[10] the injured person is not covered by a no-fault policy coordinated with other health coverage.

## IV

The no-fault automobile liability act expresses the obligation of a no-fault insurer to pay for medical expense in the following language: Benefits are payable for "[a]*llowable expenses* consisting of all reasonable charges incurred for *reasonably necessary* products, services and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3107(1)(a); MSA 24.13107(1)(a). (Emphasis added.)

Owens has the burden of establishing that the services rendered by Herrick and Saline were "allowable expenses," and that "reasonable

---

[10] In *Morgan* we reserved the question presented in *Tousignant* and the instant case whether a no-fault insurer is subject to liability for medical expense when the insured purchases a policy of no-fault automobile insurance coordinated with other health coverage, including health coverage provided by the military forces (or the Veterans Administration), and said:

We express no opinion whether an injured person who has contracted for a reduced premium under § 3109a (MCL 500.3109a; MSA 24.13109[1]), and thus has voluntarily agreed that other insurance will be primary for medical benefits, may seek recovery from a no-fault insurer unless he was unable to obtain medical care from a facility designated, pursuant to the contract with the primary insurer, by the primary insurer.

Similarly, we express no opinion whether, *if* Morgan contracted for a reduced premium under § 3109a on the basis of medical benefits available through his employment by the federal government, he voluntarily agreed that such benefits would be primary and may not seek recovery from Citizens unless he was unable to obtain medical care from a facility designated by the federal government which, in that hypothesis, has or may have, in effect, become the primary insurer for the purpose of coordination under § 3109a. [*Id.*, p 647, n 9.]

charges" were there "incurred for reasonably necessary" services.[11]

Owens also has the burden of establishing that he sought to obtain appropriate services from the Veterans Administration.

V

Owens was transferred from the Veterans Administration facility in Ann Arbor to Herrick on the recommendation of a Veterans Administration neurologist who was treating him. The physician advised Owens' parents that he required the intensive and aggressive rehabilitation services that can be provided by an inpatient head injury center, such as Herrick. His opinion and recommendation showed that the services rendered by Herrick were allowable expenses and were reasonably necessary.[12]

---

[11] In *Nasser v ACIA*, 435 Mich 33, 49; 457 NW2d 637 (1990), this Court held that it is the burden of the injured person to establish that the services were reasonably necessary:

[A]n insurer is not *liable* for any medical expense to the extent that it is not a reasonable charge for a particular product or service, or if the product or service itself is not reasonably necessary. The plain and unambiguous language of § 3107 makes both reasonableness and necessity explicit and necessary elements of a claimant's recovery, and thus renders their absence a defense to the insurer's liability. In addition, the burden of proof on these issues lies with the plaintiff. [Emphasis in original.]

[12] Approximately six months after the automobile accident, Owens' family, in cooperation with the staff at the Veterans Administration facility in Ann Arbor, began planning for his discharge from the facility and for rehabilitation. Under federal law, the Veterans Administration must provide services for a veteran such as Owens seeking medical treatment. 10 USC 1071 *et seq.*

A Veterans Administration social worker responsible for planning Owens' discharge, discussed options with the Owens family. According to her deposition, the Veterans Administration would pay for two types of rehabilitation. The first was neurological service at another Veterans Administration hospital. The medical services administrator

Owens also showed that efforts were made to obtain such services from the Veterans Administration. While Veterans Administration administrators said that inpatient facilities for closed head injuries were available somewhere under the auspices of the Veterans Administration, the Veterans Administration did not identify a Veterans Administration facility where such inpatient care could be provided, let alone a facility located within reasonable proximity of Owens' home and family.[13]

at the Veterans Administration facility in Ann Arbor testified on deposition that she had no idea where the closest center was, but that it *might* have been as close as Chicago.

The second option suggested by the social worker was contract nursing home care. The Veterans Administration would contract with a nursing home to pay for Owens' placement in a nursing home. He would receive rehabilitation therapy at the nursing home or at a Veterans Administration facility on an outpatient basis. There was, however, no showing that such therapy would have been the intensive, aggressive therapy that Owens' treating physician thought was necessary.

Owens' treating physician, Dr. Steven Levine, wrote a "[t]o whom it may concern" letter on behalf of the Owens family stating his opinion that Owens needed to be placed in a head injury center where he could receive intensive rehabilitation therapy. That letter, dated June 28, 1983, stated:

[Owens] is currently in need of extensive and aggressive rehabilitation that we cannot provide enough of here on the neurology service. We feel it is in Kenneth's best interest & long term health goals to be placed in a specialty rehabilitation center, such as Tecumseh [Herrick hospital]. . . . It is clear to us that a rehabilitation center would care for Kenneth in areas we cannot provide—i.e., daily—continuous rehabilitation atmosphere with similar patients.

[13] Dr. Levine stated in his deposition that placement in a "continuous rehabilitation atmosphere with similar patients" was necessary because at a rehabilitation center "the morale, the people, the caretakers, the caregivers of the patients are more atuned [sic] to the daily needs, the minute-by-minute needs, of picking up subtle changes such as seizures in these patients . . . ." Further, it was important for Owens to be with similar patients because of "psychosocial factors that interplay in a patient's recovery such as their morale, their spirit, their overall outlook for chances of recovery . . . ."

While the ACIA contends that Dr. Levine was the senior resident

While Owens showed the need for inpatient services at Herrick, neither he nor Herrick established that he needed to stay at Herrick for two years. A physician employed by the Civilian Health and Medical Program of the Uniformed Services (CHAMPUS) opined that Owens did not need to stay for more than six months.[14] His assertion is subject to question because he may have been operating under a cost containment standard more restrictive of the rights of the patient than the no-fault standard. Nevertheless, there was a genuine issue of material fact whether it was reasonably necessary for Owens to remain at Herrick for the entire two-year period, June, 1983, through June, 1985.

Turning to the outpatient services provided by Saline Community Hospital, Owens did not offer evidence that those services were allowable expenses incurred for reasonably necessary services. The ACIA, however, conceded that those services were reasonably necessary.

and not the physician in charge, Dr. Levine stated in his deposition that the letter represented the consensus of the physicians in the neurology department who were treating Owens. The ACIA has produced no evidence indicating that any of the treating physicians at the Veterans Administration would have recommended a different course of rehabilitation.

[14] CHAMPUS is a supplemental program to the direct medical care system available to former members of the uniformed services. It provides financial assistance for certain prescribed medical care obtained from civilian sources.

A Dr. Mark Kogan reviewed Owens' medical records in response to a request by the Owens' attorney that CHAMPUS pay for Owens' treatment at Herrick. Kogan wrote in a memorandum to CHAMPUS that Owens could have obtained the necessary services on an outpatient basis after December 31, 1983. He observed that Owens was out frequently on weekend and evening passes by January 1, 1984 and had shown that he could function outside the controlled and structured environment provided by Herrick.

Kogan concluded, on the basis of the records showing the type of treatment provided, the nurses notes on Owens' condition and the frequent passes that inpatient medical treatment at Herrick was unnecessary after December 31, 1983. The decision was affirmed by a CHAMPUS reviewing agency.

We agree, however, with the ACIA that Owens failed to discharge his obligation to establish that he sought to obtain such outpatient services from the Veterans Administration. Summary disposition thus should not have been entered in favor of Owens respecting the services provided at Saline.

VI

The ACIA contends that it is entitled to a setoff under § 3109(1)[15] from no-fault work loss benefits otherwise due Owens for social security and Veterans Administration disability benefits received by him. Owens' no-fault policy was not coordinated respecting work loss benefits with "other . . . accident coverage." The Court of Appeals awarded work loss benefits of $13,856.31 to Owens.

The ACIA acknowledges that the total of the social security disability benefits and the total of the Veterans Administration disability benefits each exceed the $13,856.31 that it otherwise would owe Owens for work loss benefits, and that therefore it need only prevail either on the social security disability or Veterans Administration disability issue to have a complete setoff.

In *Profit v Citizens Ins Co,* 444 Mich 281; 506 NW2d 514 (1993), also decided today, we hold that social security disability benefits are government benefits under § 3109(1), rather than "other health and accident coverage" within the meaning of § 3109a.[16] The ACIA is therefore entitled to set off social security disability benefits against no-fault

---

[15] See n 8 for text.

[16] [S]ocial security disability benefits are provided as part of a mandatory, comprehensive social welfare entitlement program generally providing benefits to *all* persons who have been wage earners . . . . [*Profit, supra,* p 287. Emphasis in original.]

wage loss benefits with the result that, because the total of the social security disability benefits paid Owens exceeds the $13,856.31 in work loss benefits otherwise due Owens, the ACIA has no obligation to pay work loss benefits to Owens.

Because a social security disability setoff provides the ACIA a complete setoff for work loss benefits, we do not reach the question whether the ACIA would also be entitled to set off for Veterans disability benefits.

### VII

Because there were substantial issues of law and fact, and therefore summary disposition was not appropriate, neither attorneys fees nor interest should have been awarded to Owens or Herrick.

The case is remanded to the circuit court for further proceedings consistent with this opinion.

CAVANAGH, C.J., and GRIFFIN and MALLETT, JJ., concurred with LEVIN, J.

BOYLE, J. (*dissenting*). For the reasons expressed in my separate opinion in *Profit v Citizens Ins Co,* 444 Mich 281; 506 NW2d 514 (1993), I dissent.

BRICKLEY and RILEY, JJ., concurred with BOYLE, J.