PROFIT v CITIZENS INSURANCE COMPANY OF AMERICA

Docket No. 90904. Argued October 15, 1992 (Calendar No. 1). Decided
    September 29, 1993.

Gail Profit, as guardian and conservator of the estate of George
    Yancey, Jr., a legally incompetent person, brought an action in
    the Wayne Circuit Court against Citizens Insurance Company
    of America, Yancey's no-fault insurer, claiming that because
    his work loss benefits were not coordinated with other accident
    coverage, they should not be reduced by his social security
    disability benefits. The court, J. Phillip Jourdan, J., granted
    summary disposition for the plaintiff, finding that work loss
    benefits should not be reduced by social security disability
    benefits. The Court of Appeals, GRIFFIN, P.J., and SAWYER and
    BRENNAN, JJ., affirmed (Docket No. 120094). The insurer ap-
    peals.

    In an opinion by Justice LEVIN, joined by Chief Justice
CAVANAGH, and Justices GRIFFIN and MALLETT, the Supreme
Court held:

    Social security benefits should be subtracted by an automo-
bile no-fault insurer from the amount otherwise payable for
work loss even where the policy of insurance specifically pro-
vides that the work loss benefit and other accident coverage are
not coordinated and the insured paid a higher premium than
would have been payable had an opportunity for coordination
been offered and elected.

    1. Section 3109(1) of the no-fault automobile liability act
provides that benefits provided by a state or the federal govern-
ment shall be subtracted from no-fault benefits payable for
medical expense and work loss. Section 3109a requires no-fault
insurers to offer at reduced premium rates, deductibles and
exclusions related to other health and accident coverage on the
insured.

    2. Social security disability benefits are provided as part of a

REFERENCES

Am Jur 2d, Automobile Insurance § 368; Social Security and Medi-
    care § 1218.

Validity and construction of no-fault insurance plans providing for
    reduction of benefits otherwise payable by amounts receivable
    from independent collateral sources. 10 ALR4th 996.

mandatory, comprehensive social welfare entitlement program generally providing benefits to all persons who have been wage earners and their dependents, largely paid for by taxes levied on all wage earners. The terms "other accident coverage" and "other health coverage" do not include benefits payable under such a program. In this case, although the no-fault policy was not coordinated for work loss benefits, and the insured paid a higher premium than if the policy had been coordinated, social security disability benefits, because they are benefits provided or required to be provided under the laws of the federal government, are to be subtracted from work loss benefits otherwise payable for an automobile injury.

Reversed.

Justice Boyle, joined by Justices Brickley and Riley, concurring in part and dissenting in part, stated that the rationale expressed by the majority may perpetuate litigation regarding the scope of no-fault coverage, the conditions under which coordination might be appropriate, and the extent to which § 3109(1) has any continued viability. By examining the insurance policy rather than the benefit at issue, restrictively defining benefit under § 3109(1), and treating the phrases as functional equivalents of each other, the majority converts benefits that state or federal law mandate be provided, into other health and accident coverage.

Section 3109(1) allows no-fault insurers to subtract from benefits otherwise owed, those benefits provided or required to be provided pursuant to state or federal law. The focus of this provision is not on who pays the benefits, but on whether the benefits are provided pursuant to law. Only benefits not provided pursuant to the laws of any state or the federal government are subject to coordination under § 3109a.

In this case, under § 3109(1), the insurer must subtract social security disability benefits from work loss benefits otherwise payable, not because social security is a mandatory entitlement program, but because the benefit is provided pursuant to federal law and meets the test articulated in *Jarosz v DAIIE,* 418 Mich 565 (1984).

187 Mich App 55; 466 NW2d 354 (1991) reversed.

Insurance — No-Fault — Coordination of Benefits — Work Loss Benefits — Social Security Benefits.

Social security benefits should be subtracted by an automobile no-fault insurer from the amount otherwise payable for work loss even where the policy of insurance specifically provides that the work loss benefit and other accident coverage are not

coordinated, and the insured paid a higher premium than
would have been payable had an opportunity for coordination
been offered and elected (MCL 500.3109, 500.3109a; MSA
24.13109, 24.13109[1]).

*Miller & Lemberg, P.C.* (by *Wayne J. Miller*), for
the plaintiff.

*Still, Nemier, Tolari & Landry, P.C.* (by *Rik
Mazzeo* and *Michelle E. Mathieu*), for the defen-
dants.

Amici Curiae:

*Gross & Nemeth* (by *James G. Gross* and
*Mary T. Nemeth*) for Auto Club Insurance Associ-
ation and Michigan Association of Insurance Com-
panies.

*Dykema, Gossett* (by *Donald S. Young, Kathleen
McCree Lewis,* and *Ronald J. Torbert*) for Michi-
gan Catastrophic Claims Association.

LEVIN, J. The no-fault automobile liability act
provides, in § 3109(1) of the Insurance Code, that
benefits provided by a state or the federal govern-
ment "shall be subtracted" from no-fault benefits
payable for medical expense and work loss.[1] The
act also provides, in § 3109a, that a no-fault in-
surer shall offer, at appropriately reduced pre-
mium rates, deductibles and exclusions related to

---

[1] MCL 500.3109(1); MSA 24.13109(1) provides in part:

Benefits provided or required to be provided under the laws
of any state or the federal government shall be subtracted from
the personal protection insurance benefits otherwise payable
for the injury.

Personal protection insurance benefits include benefits for medical
expense and work loss (MCL 500.3107; MSA 24.13107).

other "health and accident coverage" of the insured.[2]

A policy of no-fault insurance issued by Citizens Insurance Company of America to George Yancey, Jr., provided for coordination, at a reduced premium, of no-fault medical expense benefits with "other health coverage" of Yancey, but did not provide for coordination of no-fault work loss benefits with "other accident coverage" of Yancey.

Yancey was seriously injured in an automobile accident. Citizens paid work loss benefits less social security disability benefits. Gail Profit, Yancey's guardian, commenced this action against Citizens claiming that, because Yancey did not elect to coordinate work loss benefits with other accident coverage, Citizens should not have reduced the work loss benefits by social security disability benefits paid by the federal government.

The question presented is whether social security disability benefits are to be subtracted by an automobile no-fault insurer from the amount otherwise payable for work loss where the policy of insurance specifically provides that the work loss benefit and other accident coverage are not coordinated, and thus the insured paid a higher premium than would have been payable had he been offered an opportunity and had elected to coordinate. We hold that social security disability benefits should be subtracted.

I

Profit contends, and the circuit judge and the

_____

[2] MCL 500.3109a; MSA 24.13109(1) provides in part:

    An insurer providing personal protection insurance benefits shall offer, at appropriately reduced premium rates, deductibles and exclusions reasonably related to other health and accident coverage on the insured.

Court of Appeals agreed, that work loss benefits should not be reduced by social security disability benefits. The Court of Appeals said that while it found Citizens' "arguments to be strong and persuasive," Citizens' position was rejected in *LeBlanc v State Farm Mutual Automobile Ins Co,* 410 Mich 173; 301 NW2d 775 (1981), and *Tatum v Government Employees Ins Co,* 431 Mich 663; 431 NW2d 391 (1988). The Court of Appeals "reluctantly" followed *Tatum.*[3]

In *LeBlanc,* this Court held that a no-fault insurer could not subtract Medicare benefits from no-fault medical expense benefits where the insured had not elected to coordinate medical expense with "other health coverage." In *Tatum,* this Court held that medical benefits paid by the federal government to or for a member of the armed forces for injuries suffered in an automobile accident could not be subtracted by an insurer from no-fault medical expense benefits where the insured had not elected to coordinate no-fault medical expense benefits with "other health coverage."

II

Citizens and amici curiae ask that *LeBlanc* and *Tatum* be overruled.

The Congress eliminated the operative effect of *LeBlanc* by enacting that Medicare is secondary to automobile insurance where coverage under such insurance is available.[4] *Tatum,* nevertheless, relied on *LeBlanc.* In *Tatum,* like *LeBlanc,* the insured was not offered and did not elect to coordinate no-fault medical expense benefits with other health coverage.

[3] 187 Mich App 55, 61-62; 466 NW2d 354 (1991).

[4] See Omnibus Budget Reconciliation Act of 1980, 42 USC 1395b. The 1980 legislation was not in issue in *LeBlanc.*

A

We agree with Citizens that this Court may very well have erred in *LeBlanc*[5] in equating benefits provided under a policy of insurance written by a private insurer such as Blue Cross-Blue Shield of Michigan, the paradigm "other health coverage," with benefits provided under a mandatory federal entitlement program (Medicare), generally providing benefits to *all* persons over sixty-five, largely paid for by taxes levied on *all* wage earners. It does not, however, follow that *Tatum* should now be overruled.

B

In *Tatum,* this Court observed that the benefits provided under military medical coverage are "similar" to those provided by a policy issued by BCBSM, and that BCBSM coverage "*when provided through one's employer,* can parallel that which is provided to active military personnel by the federal government. . . ."[6] (Emphasis added.) This Court continued:

> We can perceive no rational basis for concluding that military medical benefits, which essentially serve the same purpose as Blue Cross-Blue Shield and Medicare benefits, are not "health and accident coverage" within the meaning of § 3109a.[7]

There is no need in the instant case to reconsider *Tatum,* nor would it be appropriate to do so:

---

[5] We do not, however, overrule *LeBlanc.* The rights of injured persons, and the obligations of insurers, that were not affected by the legislation referred to in the preceding footnote, are not affected by today's decision.

[6] *Id.,* p 670.

[7] *Id.*

- Social security disability benefits are not medical benefits and do not "serve the same purpose as Blue Cross-Blue Shield and Medicare benefits;"[8]
- Yancey was not an employee of the federal government;
- For reasons set forth in part III, social security disability benefits are benefits provided under federal law, within the meaning of § 3109(1), and are not "other health and accident coverage" within the meaning of § 3109a.

III

The record does not indicate that social security disability benefits are "similar"[9] to those provided by policies of insurance issued by private insurers who provide accident coverage that is generally available to and purchased by employers for their employees or by the employees themselves.

In all events, social security disability benefits are provided as part of a mandatory, comprehensive social welfare entitlement program generally providing benefits to *all* persons who have been wage earners, and dependents of such persons, largely paid for by taxes levied on *all* wage earners. With few exceptions, no employer, no employee, can lawfully avoid paying social security taxes and participating in this social welfare program.

The term "other accident coverage," like the term "other health coverage," does not—now that *LeBlanc* has, to that extent, been disapproved—

[8] *Id.*
[9] *Id.*

include benefits payable under such a program.[10] Accordingly, although Yancey purchased a policy of no-fault insurance that was not coordinated for work loss benefits, and paid a somewhat higher premium than if the policy had been so coordinated, social security disability benefits, because they are "[b]enefits provided or required to be provided under the laws" of the federal government, "shall be subtracted" from work loss benefits otherwise payable for an automobile injury.

In so holding, we follow *O'Donnell v State Farm Mutual Automobile Ins Co,* 404 Mich 524; 273 NW2d 829 (1979), in which this Court held that social security survivors' benefits are required to be subtracted,[11] *Thompson v Detroit Automobile Inter-Insurance Exchange,* 418 Mich 610; 344 NW2d 764 (1984), in which this Court held that social security disability benefits paid to dependents of an injured wage earner are required to be subtracted, and *Mathis v Interstate Motor Freight System,* 408 Mich 164; 289 NW2d 708 (1980), in which this Court held that workers' compensation benefits are required to be subtracted from no-fault work loss benefits otherwise payable for an automobile injury.

Reversed.

CAVANAGH, C.J., and GRIFFIN and MALLETT, JJ., concurred with LEVIN, J.

BOYLE, J. (*concurring in part and dissenting in part*). We write separately to express the view that it is long past time both to limit *LeBlanc v State Farm Mutual Automobile Ins Co,* 410 Mich 173; 301 NW2d 775 (1981), and to acknowledge that the

---

[10] But see n 5.

[11] But see *Jarosz v DAIIE,* 418 Mich 565; 345 NW2d 563 (1984), in which this Court held that social security old-age benefits are not required to be subtracted.

hybrid benefit theory we endorsed in *Tatum v
Government Employees Ins Co,* 431 Mich 663; 431
NW2d 391 (1988), was an ill-considered attempt to
avoid such limitation.[1] Because the majority opin-
ions fail to provide a basis for distinguishing be-
tween benefits "provided or required to be pro-
vided" pursuant to state or federal law and "other
health and accident coverage" that a prospective
insured must be given the option to coordinate, we
dissent.

The majority opinions not only fail to extricate
us from more than a decade of litigation regarding
the interpretation of § 3109(1) and § 3109a of the
no-fault act, but the various rationales advanced
will encourage new rounds of litigation continuing
the trend of shifting the risks of medical treat-
ment from health insurers to no-fault insurers.[2]
The no-fault insurers simply have not undertaken
those risks, and to place them on the no-fault
insurers works to the detriment of all. We believe
that continued ad hoc resolution of these issues
can only lead to further social and judicial costs.

I

The majority does not adequately define the
difference between benefits required by law, there-
fore subject to automatic setoff under § 3109(1),
and "other health and accident coverage" to be
coordinated pursuant to § 3109a. Section 3109(1)
provides an offset to no-fault insurers for "[b]en-
efits provided or required to be provided *under the*

---

[1] We would disavow the rationale of *LeBlanc,* and would prospec-
tively overrule *Tatum.*

[2] The shift occurs despite our holding in *Federal Kemper Ins Co, Inc
v Health Ins Administration, Inc,* 424 Mich 537; 383 NW2d 590
(1986), that when an insured opts to coordinate health care coverage
with no-fault coverage, pursuant to MCL 500.3109a; MSA 24.13109(1),
the health care insurer or provider is primarily liable for the pay-
ment of medical care benefits.

*laws of any state or the federal government . . . .*"
(Emphasis added.) This provision focuses on
whether benefits are provided pursuant to state or
federal law rather than on who pays the benefits.
When no such law directs payment of benefits,
benefits owed to the insured, even if paid by a
governmental entity, are not to be automatically
subtracted, but must be coordinated under § 3109a.

Although holding that social security disability
benefit payments are to be subtracted from no-
fault work loss benefits, the majority, in dicta,
differentiates between benefits provided under a
mandatory federal entitlement providing benefits
to "*all* persons . . . paid for by taxes levied on *all*
wage earners," *ante* at 287, and health and acci-
dent coverage provided as a fringe benefit of em-
ployment, whether private or governmental.

The majority converts § 3109(1) "benefits" into
the § 3109a question of "coverage" by concluding
that because the insured had a coordinated policy,
health care coverage "in consequence of his em-
ployment" in the military forces is primary.
*Owens v ACIA,* 444 Mich 314, 319; 506 NW2d 850
(1993). The majority opinion does not address the
question what benefits are provided or required to
be provided under state or federal law, § 3109(1).
Rather, in *Owens,* the opinion simply concludes
that to the extent that appropriate medical ser-
vices are provided by the military or Veterans
Administration they are "other health coverage"
under § 3109a.

Moreover, despite our previous holding that
"benefits" are to be determined as a matter of law
under the no-fault statute, not the insurance pol-
icy, *Rohlman v Hawkeye-Security Ins Co,* 442
Mich 520; 502 NW2d 310 (1993), the majority
suggests further, in *Owens* at 321, n 7, that the
term "benefits payable" is the "functional[ ] equiv-

alent" of "required to be provided" in § 3109(1),
thus borrowing its analysis in *Tousignant v All-
state Ins Co,* 444 Mich 301, 312; 506 NW2d 844
(1993), that the appropriate examination deter-
mines whether the policy covered benefits "paid,
payable or required to be provided." Thus, the
majority looks first to the policies in *Profit* and
*Owens* to determine whether they were coordi-
nated, instead of examining the benefits under
§ 3109(1) to determine whether they were provided
pursuant to the law of a state or the federal
government.

The methodology is proof of the adage that in
judicial opinions, the rationale, not the result, is
everything. Thus, without adequate reasoning, in
*Owens* the majority essentially finds that medical
services provided by the United States military or
the Veterans Administration is "other health and
accident coverage" under § 3109a and duplicative
payments are available where coverage is uncoor-
dinated; and it suggests in *Profit* that § 3109(1)
benefits are only those provided under a "manda-
tory federal entitlement program . . . largely paid
for by taxes levied on *all* wage earners." *Ante* at
286.

Further illustrating that the rationale is more
important than the result, the majority in part III
of the *Owens* opinion also repudiates the *Jarosz*[3]
test by turning the distinction between benefits
and other health or accident coverage into issues
of functional equivalence. See *Owens* at 321-323.
Thus, where the issues are essentially the same,
and a choice is made to coordinate, § 3109(1) need
not be considered. The corollary is that when the
issues are the same, and the insured has pur-
chased uncoordinated protection pursuant to

[3] *Jarosz v DAIIE,* 418 Mich 565; 345 NW2d 563 (1984).

§ 3109a, the no-fault insurer must replicate benefits despite the Legislature's intent.

Finally, the majority also invites future distinction under § 3109a between those who are insurers of health care and those who are insurers *and* providers, suggesting that insurers who are providers may not fall within the phrase "health care coverage."[4] Interpreting § 3109a and the policy to cover benefits "paid, payable or required to be provided," the majority concludes that services provided are "benefits" required to be provided to the insured. Thus, the majority transfers "benefits" and "required to be provided" from § 3109(1) to § 3109a, suggesting that service in kind is not a "benefit" under § 3109. Services are not "benefits" under § 3109(1) even if required by law to be provided, and services may not be "coverage" under § 3109a if privately provided.

We agree with the result in both *Tousignant* and *Profit,* and disagree with the result in *Owens.* However, our concern is that the rationale of the opinions will perpetuate litigation regarding the scope of no-fault coverage, the conditions under which coordination might be appropriate, and the extent to which § 3109(1) has any continued viability. This could be avoided by properly distinguishing between § 3109(1) and § 3109a.

## II. *PROFIT v CITIZENS INSURANCE*

The goal of the no-fault insurance system was to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses. By making no-fault insurance cover-

[4] It should also be noted that as in *Owens,* Justice LEVIN suggests in *Tousignant* at 308-309, that there is a distinction between an insurer and a health care provider, suggesting there is a distinction for purposes of § 3109a between the provision of services and the payment of bills.

age mandatory, MCL 500.3101; MSA 24.13101, the Legislature ensured that victims of automobile accidents would be recompensed for injuries sustained in motor vehicle accidents.

However, because the system was mandatory, it was imperative to contain costs so that vehicle owners or registrants could afford to purchase insurance policies.[5] Therefore, the Legislature mandated subtraction of "[b]enefits provided or required to be provided under the laws of any state or the federal government . . . from the personal protection insurance benefits otherwise payable for the injury." MCL 500.3109(1); MSA 24.13109(1). The insurer remains primarily liable for the personal protection benefits, but it may reduce the extent of its liability where the laws of any state or the federal government mandate that a benefit be provided as a result of the injury.[6]

As originally enacted, the act did not contain a mechanism by which those who were already covered under a health and accident insurance policy could coordinate coverage with no-fault personal protection insurance. State or federal law does not currently mandate that "other health and accident coverage" be purchased by or for anyone.[7] The Legislature did, however, recognize that in many instances owners and registrants of motor vehicles in Michigan were also covered by other health and accident insurance.

---

[5] *O'Donnell v State Farm Mutual Automobile Ins Co,* 404 Mich 524, 547-548; 273 NW2d 829 (1979).

[6] The mandatory subtraction of benefits "provided or required to be provided" pursuant to state or federal law allows insurers to anticipate the risk being secured. If state or federal law provides that the benefit is to be provided by a source other than the no-fault insurer, the no-fault insurer is not securing that risk and can reduce the basic no-fault premium accordingly.

[7] The majority would arguably pave the way for circumvention of the mandatory setoff were the federal government to mandate health insurance coverage for all. That possibility counsels restraint.

[A]uto insurance premiums have not been reduced as some persons had anticipated. Many believe the average driver is overbuying in regards to accident and medical insurance since no-fault coverage overlaps with portions of the medical coverage offered by the private accident and health insurers and the group plans of Blue Cross and Blue Shield. Some persons claim Michigan residents should not be required to pay for this duplicate coverage and that automobile insurers should offer deductions and exclusions at reduced premiums to those who pay for similar coverage under other health and accident plans. Further, many contend this elimination of duplicate coverage by the no-fault insurers would result in a substantial savings to Michigan drivers. [House Legislative Analysis, HB 5724, February 27, 1974.]

Two years after the advent of mandatory no-fault, the Legislature amended the no-fault act to provide that "[a]n insurer providing personal protection insurance benefits shall offer, at appropriately reduced premium rates, deductibles and exclusions reasonably related to other health and accident coverage on the insured." MCL 500.3109a; MSA 24.13109(1). Under § 3109a, an insured may opt to coordinate insurance coverage, making the health and accident insurer primarily liable for medical coverage in the event of an automobile accident. This is in direct contrast to mandatory subtraction of benefits received or to be received from another source pursuant to state or federal law from the insurer's liability for those benefits. Because coverage is coordinated, the no-fault insurer is simply not liable for any medical expense benefit payments until the benefits under the "other health or accident coverage" have been exhausted.

It is undisputed that savings on basic no-fault

insurance premiums was a goal of the original no-fault act and was to be accomplished through the mandatory setoff of duplicative benefits provided by government pursuant to state or federal law under § 3109(1). In enacting § 3109a, the Legislature anticipated that further savings would be effected on an individual basis. Duplicative insurance coverage would be avoided at the option of the insured, and insurance premiums would be reduced to reflect this choice. Moreover, § 3109a allows consumers who require more insurance the flexibility to arrange for it by opting not to coordinate coverage and paying the higher premium.

Therefore, contrary to the rationale advanced by the majority, separate purposes are served by §§ 3109(1) and 3109a. We erred when we held that the Legislature intended to include benefits required to be provided by law under the umbrella of other health and accident coverage, and that error, compounded by today's majority, further undermines the purpose of § 3109(1), cost containment.[8]

Under § 3109(1) the court must first determine whether other benefits available to the insured were provided or required to be provided pursuant

[8] We note parenthetically that the Legislature has recently amended § 3109a. 1993 PA 143. The amendment does not disturb the "benefits provided or required to be provided" language in § 3109(1). It explicitly provides that Medicare and Medicaid are "not considered other health and accident coverage for purposes of this section:"

Coverage under title XVIII of the social security act, chapter 531, 49 Stat 620, 42 USC 1395 to 1395b, 1395b-2, 1395c to 1395i, 1395i-2 to 1395i-4, 1395j to 1395t, 1395u to 1395w-2, 1395w-4 to 1395ccc, or title XIX of the social security act, chapter 531, 49 Stat 620, 42 USC 1396 to 1396f and 1396i to 1396u, or coverage pursuant to a medicare supplemental policy or certificate or a contract issued by a health maintenance organization to an individual eligible for medicare is not considered other health and accident coverage for purposes of this section. [MCL 500.3109a(3); MSA 24.13109(1)(3).]

to state or federal law. If state or federal law mandates provision, the benefits

> must be deducted from no-fault benefits under § 3109(1) if they:
> 1) Serve the same purpose as the no-fault benefits, and
> 2) Are provided or are required to be provided as a result of the same accident. [*Jarosz v DAIIE*, 418 Mich 565, 577; 345 NW2d 563 (1984).]

It is undisputed that federal law mandates that social security disability benefits be "provided." See 42 USC 423. It is also undisputed that plaintiff has been receiving social security disability benefits. Furthermore, the benefits serve the same purpose as no-fault work loss benefits and are provided as a result of the same accident. See *Thompson v DAIIE*, 418 Mich 610, 625; 344 NW2d 764 (1984) (RYAN, J., concurring) ("[T]he no-fault work loss benefits and the social security disability payments are both intended to relieve [the disabled person] and his family of the economic hardship which would result from his inability because of his injuries to earn wages to support himself and his family").

Thus, we agree that pursuant to § 3109(1) the insurer must subtract social security disability benefits received by plaintiff from the work loss benefits otherwise payable, *not* because social security is a mandatory entitlement program paid for by "taxes levied on all wage earners," *ante* at 287, but because the benefit is provided pursuant to federal law and meets the *Jarosz* test.

### III. *OWENS v ACIA*

Under § 3109(1), the ACIA is liable for plaintiff's medical benefits but may reduce its liability to the

extent that, in this instance, federal law requires that the medical benefit be provided by another source. It is undisputed that federal law requires that veterans are entitled to treatment at a Veterans Administration facility. 38 USC 1710.

The medical care provided by the Veterans Administration serves the same purpose as the no-fault medical benefit—treatment of injury received in an automobile accident. In addition, VA medical care was received as a result of the same accident for which no-fault medical benefits are sought.

Therefore, if treatment was directly available at a VA facility, the ACIA may subtract the value of that treatment from the medical benefits it would otherwise be liable to pay to Owens, *not* because the medical care was "health care coverage," *Owens* at 321-322, but because it is a benefit provided pursuant to federal law and meets the *Jarosz* test.[9]

If medical care is not available at a VA facility, federal law allows the VA to contract for medical care in a private facility. 38 USC 1703.[10] However, because contract care is at the discretion of the

---

[9] The ACIA argues that a genuine issue of material fact exists regarding the availability of direct treatment for Owens at a VA facility. We agree. Further factual development regarding the location of VA facilities (if any) that could provide the treatment that Owens required is possible. Thus, we would remand for a trial to determine whether treatment could have been directly provided at a VA facility.

[10] 38 USC 1703(a) provides in pertinent part:

> (a) When Department facilities are not capable of furnishing economical hospital care or medical services because of geographical inaccessibility or are not capable of furnishing the care or services required, the Secretary . . . *may* contract with non-Department facilities in order to furnish any of the following:
> (1) Hospital care or medical services to a veteran for the treatment of—
> (A) a service-connected disability;
> (B) a disability for which a veteran was discharged or released from the active military . . . . [Emphasis added.]

Secretary of Veteran Affairs, we would hold that it is not "required to be provided" within the meaning of § 3109(1). Contract care need not be subtracted from medical expense benefits otherwise payable unless the secretary has exercised discretion and authorized the care, and the insured has opted not to be treated at the authorized contract facility. Under these circumstances, the no-fault insured's efforts to obtain the benefit become relevant. At a minimum, the insured must ask the government to exercise its discretion and award the benefit. If the secretary then decides not to contract for private medical care, the benefit is not "required to be provided" within the meaning of § 3109(1), and the no-fault insurer's liability for the medical expense benefit may not be reduced.[11]

Finally, because we agree that social security disability benefits are benefits that must be subtracted from the insurer's no-fault work loss benefits otherwise payable in *Profit,* we agree that they must also be subtracted from the ACIA's liability here.

We would also hold that the Veterans Administration disability benefits must be subtracted from work loss benefits the ACIA would otherwise pay. Veterans Administration disability benefits are provided pursuant to federal law. See 38 USC 1131. They are payable to a veteran who was disabled and discharged from service "[f]or disability resulting from personal injury suffered or disease contracted in [the] line of duty, or for aggravation of a preexisting injury suffered or disease contracted in [the] line of duty, in the active military . . . ." *Id.*[12] Furthermore, the VA disabil-

---

[11] We would also hold that a genuine issue of material fact exists regarding contract care available to Owens through the VA.

[12] In this regard they are akin to workers' compensation benefits payable to an injured worker to compensate the worker for decreased

ity benefits in this case were payable as a result of the same accident for which the no-fault work loss benefits are payable.

### IV. *TOUSIGNANT v ALLSTATE*

The majority also introduces the notion that the insured must make "reasonable efforts to obtain" payment or treatment from the health care provider before turning to the no-fault insurer for payment of medical expenses. *Post* at 311-312, citing *Perez v State Farm Mutual Automobile Ins Co,* 418 Mich 634; 344 NW2d 773 (1984). We would hold that where an insured has opted to coordinate coverage pursuant to § 3109a, the insured has contractually agreed first to seek benefits under the insured's preexisting health and accident coverage.

References to the "reasonable efforts" of the insured to obtain payment are, in this context, irrelevant, and will only increase uncertainty and add to litigation. Tousignant agreed to coordinate coverage pursuant to § 3109a. The no-fault policy expressly provides that if the insured coordinated coverage, then Allstate would

> "not be liable to the extent that any elements of loss covered under Personal Protection Insurance allowable expenses benefits are paid, payable or required to be provided to . . . the named insured . . . under the provisions of any valid and collectible
> "(a) individual, blanket or group accident disability or hospitalization insurance,

wage-earning capacity. Workers' compensation benefits payable must be set off from automobile no-fault work loss benefits. See *Perez v State Farm Mutual Automobile Ins Co,* 418 Mich 634; 344 NW2d 773 (1984); *Mathis v Interstate Motor Freight System,* 408 Mich 164; 289 NW2d 708 (1980).

"(b) medical or surgical reimbursement plan
 . . . ." [*Id.* at 304, n 5.]

Thus, under the clear language of the policy, Allstate is simply not liable for medical expense benefits that should have been paid for or provided by another source. The policy does not require that the insured make reasonable efforts to obtain the benefit from the other source. Allstate's liability for medical expense benefits is premised on their unavailability from other sources. If medical expense benefits were available to the insured under any other health care plan, Allstate need not pay for them; if they were not, Allstate must pay.

V

In sum, the majority opinions constitute another step in a process that undermines the legislative purpose of § 3109(1). By examining the insurance policy rather than the benefit at issue, restrictively defining benefit under § 3109(1), and treating the phrases as functional equivalents of each other, the majority opinions convert "benefits" that state or federal law mandates be provided, into "other health and accident coverage." Section 3109(1) allows no-fault insurers to subtract from benefits otherwise owed, those benefits provided or required to be provided pursuant to state or federal law. The focus of this provision is not on who pays the benefits. Rather, the focus is on whether the benefits are provided pursuant to law. Only benefits not provided pursuant to "the laws of any state or the federal government" are subject to coordination under § 3109a.

BRICKLEY and RILEY, JJ., concurred with BOYLE, J.