MORGAN v CITIZENS INSURANCE COMPANY OF AMERICA

Docket No. 81755. Argued October 5, 1988 (Calendar No. 9). Decided July 18, 1989. Rehearing denied 433 Mich 1201.

William Morgan was injured in an automobile accident while on duty with the National Guard. His initial medical expenses were paid by the federal government. Nine months after the accident, he received treatment and underwent surgery in a nonmilitary hospital for an injury he claimed was related to the automobile accident. He sought payment from Citizens Insurance Company of America, his no-fault insurer, and was refused. Morgan brought an action in the Van Buren Circuit Court against Citizens, seeking reimbursement. During the pendency of the litigation, he sought and was denied payment by the National Guard. The court, Meyer Warshawsky, J., granted summary disposition for Citizens on the grounds that under § 3109(1) of the no-fault act the plaintiff did not have the option of obtaining nonemergency medical care in a nonmilitary hospital and seeking payment for the care from Citizens, where the federal government is required by law to provide the services at a military hospital, and that the plaintiff failed to show that he had used reasonable efforts to obtain repayment from the federal government for the expenses incurred at the nonmilitary hospital. The Court of Appeals, CYNAR, P.J., and WEAVER and J. H. HAUSNER, JJ., affirmed in an opinion per curiam (Docket No. 94680). The plaintiff appeals.

In an opinion by Justice LEVIN, joined by Justices CAVANAGH, ARCHER, and GRIFFIN, the Supreme Court held:

The no-fault act preserves to the injured person a choice of medical service providers. Section 3109(1) does not deprive an injured person, who may be eligible to obtain service in kind in a military hospital, of such choice of medical service providers. While the plaintiff did not have the option under the no-fault act of choosing "which insurance" would pay his medical

REFERENCES

Am Jur 2d, Automobile Insurance §§ 287, 291, 328, 436.

Validity and construction of no-fault insurance plans providing for reduction of benefits otherwise payable by amounts receivable from independent collateral sources. 10 ALR4th 996.

expense, he was not precluded from seeking payment of the expenses incurred in the nonmilitary hospital simply because he could have had the surgical procedure performed in a military hospital.

1. Under § 3109(1) of the no-fault act, benefits provided or required to be provided by the federal government are to be subtracted from personal protection insurance benefits otherwise payable for an injury. The benefits required to be subtracted generally are dollar amounts. The purpose of § 3109(1) is to eliminate duplicative benefits provided or required to be provided under federal or state law and thereby reduce the cost of no-fault automobile insurance. Because of differences in quality and service, medical service provided in kind by a governmental source may not be duplicative of medical service obtainable in the private sector with the no-fault medical expense benefit.

2. The Legislature did not intend that however legitimate the injured person's concern regarding the quality of governmental service provided in kind, it is nevertheless a benefit as a matter of law within the meaning of § 3109(1). A person injured in an automobile accident is not required under § 3109(1) to accept whatever medical service in kind the governmental source may provide. Governmental medical service may not be comparable in quality and service with the doctor or hospital service that the injured person purchased or may be able to purchase with no-fault dollars. A surgical procedure performed in a military hospital may not, because of differences in quality and service, be duplicative of the medical service that an injured person could obtain and pay for with the no-fault medical expense benefit through the exercise of the choice in medical service providers preserved to injured persons under the no-fault act.

3. Injured persons need not obtain authorization from a governmental source before proceeding with medical treatment that has been advised as necessary by a physician. However, an injured person must submit a request for payment from the governmental source and provide whatever documentation reasonably may be required. The no-fault insurer has the burden of establishing that had such a request been made benefits would have been paid or payable.

Reversed and remanded for trial.

Justice BRICKLEY, joined by Chief Justice RILEY, dissenting, stated that in this case the benefits provided in kind are "benefits provided or required to be provided" under § 3109(1) of the no-fault act and may be subtracted from the no-fault

insurer's liability under the policy. By including the term "required to be provided" in the statute, the Legislature indicated that regardless of whether benefits are accepted, the fact that they are required to be provided is sufficient to permit the no-fault insurer to receive credit for the benefits available to the insured. Likewise, it is obvious that the term "subtracted" was intended to mean that a no-fault insurer is not required to pay for benefits an insured received or could have received. To allow an insured to decline benefits in kind and to incur costs of treatment outside the benefits provided or required to be provided by law and not to allow the subtraction of those benefits by the no-fault insurer would be a clear frustration of the specific intent of § 3109(1) and the overall goal of the no-fault scheme.

Justice Boyle concurred only in the result reached by Justice Brickley.

163 Mich App 115; 413 NW2d 747 (1987) reversed.

1. Insurance — No-Fault — Governmental Benefits in Kind — Setoff.

The no-fault act preserves to the injured person a choice of medical service providers; section 3109(1) does not deprive an injured person, who may be eligible to obtain service in kind in a military hospital, of such choice of medical service providers (MCL 500.3109[1]; MSA 24.13109[1]).

2. Insurance — No-Fault — Governmental Benefits in Kind — Setoff.

A person injured in an automobile accident who is eligible for governmental benefits in kind may choose treatment by non-governmental hospitals or physicians that has been advised as necessary by a physician without prior authorization by the governmental source; however, the injured person must submit a request to the governmental source for payment and provide necessary documentation; in order to deduct such benefits in kind from no-fault benefits otherwise payable, the insurer must establish that the injured person did not submit a request for payment from the governmental source and that had the request been made the governmental benefits would have been paid or payable (10 USC 1071; MCL 500.3109[1]; MSA 24.13109[1]).

*Sloan, Benefiel, Farrer, Newton & Glista* (by *James Thomas Sloan, Jr.,* and *Gary C. Newton*) for the plaintiff.

*Lilly, Domeny & Byrne* (by *Joseph A. Byrne, Jr.*)
for the defendant.

LEVIN, J. The principal question presented is
whether plaintiff William Morgan's no-fault auto-
mobile insurer, defendant Citizens Insurance Com-
pany of America, is relieved of responsibility un-
der § 3109(1)[1] of the no-fault automobile liability
act for the payment of medical expenses incurred
by Morgan in a nonmilitary hospital if Morgan
could have obtained the medical service without
charge at a military hospital.

The no-fault act preserves to the injured person
a choice of medical service providers. Section
3109(1) does not deprive an injured person, who
may be eligible to obtain service in kind in a
military hospital, of such choice of medical service
providers.

The purpose of § 3109(1) is to eliminate duplica-
tive benefits provided or required to be provided
under federal or state law and thereby reduce the
cost of no-fault automobile insurance. Because of
differences in quality and service, medical service
provided in kind by a governmental source may
not be duplicative of medical service obtainable in
the private sector with the no-fault medical ex-
pense benefit.

I

William Morgan was injured in an automobile
accident on his way to National Guard training.
Citizens is the no-fault insurer. Morgan's initial
medical expenses were paid by the federal govern-

---

[1] Benefits provided or required to be provided under the laws
of any state or the federal government shall be subtracted from
the personal protection insurance benefits otherwise payable
for the injury. [MCL 500.3109(1); MSA 24.13109(1).]

ment because he was on military service when the accident occurred.

Nine months after the accident, Morgan experienced pain, sought treatment at a nonmilitary hospital, and was advised to undergo surgery for a ruptured disc. He did so, and incurred medical expense exceeding $10,000. Morgan sought payment of this expense by Citizens. Citizens refused and Morgan commenced this action. During the pendency of this litigation, he submitted bills for this expense to the National Guard, which denied payment.

The circuit judge granted Citizens' motion for summary disposition on the basis of § 3109(1) of the no-fault act which requires that benefits provided or required to be provided under the laws of the federal government be subtracted from the benefits otherwise payable by the no-fault insurer.

The judge declared that Morgan did not have the option under the act of obtaining nonemergency medical care in a nonmilitary hospital and seeking payment from a no-fault insurer when the federal government is required by law to provide the medical service at a military hospital. He also said that Morgan failed to show that he used reasonable efforts to obtain repayment from the federal government of the expense he had incurred at a nonmilitary hospital.

The Court of Appeals in affirming observed that in *Crowley v DAIIE,* 428 Mich 270; 407 NW2d 372 (1987), this Court declared that amounts paid by the federal government for medical care provided a member of the armed forces pursuant to 10 USC 1071 is a benefit provided under the laws of the federal government required under § 3109(1) to be subtracted from¹ no-fault benefits otherwise pay-

able to the injured person.[2] The Court also noted
*Perez v State Farm Mutual Automobile Ins Co,*
418 Mich 634; 344 NW2d 773 (1984), where this
Court ruled that benefits required to be paid to a
worker injured in a motor vehicle accident as
workers' compensation, but which will not be paid
because the employer did not have workers' com-
pensation coverage, are not required under
§ 3109(1)[3] to be subtracted from no-fault work-loss
benefits. The Court of Appeals said that in *Perez*
the workers' compensation benefits "were unavail-
able to the plaintiffs."[4] The Court of Appeals also
found significant this Court's decision in *Gregory v
Transamerica Ins Co,* 425 Mich 625, 634-636; 391
NW2d 312 (1986), where the Court held that the
workers' compensation disability benefits payable
for the full period of disability rather than the
lesser amount paid in redemption of the insurer's
liability to pay such benefits should be subtracted
from the amount of the no-fault benefits payable
to a worker injured in an automobile accident
during the course of his employment.

The Court of Appeals interpreted the decisions
of this Court as "indicating that a no-fault insurer
may offset primary insurance benefits except when
injured persons fail to receive benefits through no
fault of their own."[5] The Court said that Morgan
might have been entitled to medical benefits pro-
vided by the military if he had received treatment
at a military hospital. He did not have a choice of
having nonemergency surgery performed at a non-
military hospital and seeking payment by the no-
fault insurer. The Court of Appeals declared that

[2] *Morgan v Evans,* 163 Mich App 115; 413 NW2d 747 (1987).

[3] See n 1 for text of § 3109(1) requiring the subtraction of benefits
provided under the laws of any state or the federal government.

[4] *Morgan, supra,* p 118.

[5] *Id.,* p 119.

to allow recovery from Citizens "would defeat the purpose of the setoff provision by allowing plaintiff to choose which insurance would pay for his medical treatment."[6]

II

We agree with the Court of Appeals that Morgan did not have the option under the no-fault act of choosing "which insurance would" pay his medical expense. If federal law obliged the federal government to pay or reimburse Morgan for the expense of his medical treatment in a nonmilitary hospital, Citizens was not, by reason of § 3109(1), obliged to do so.

We do not agree, however, with the Court of Appeals or the circuit judge that Morgan was precluded from seeking payment of expense incurred in a nonmilitary hospital simply because he could have had the surgical procedure performed in a military hospital.

The act speaks of benefits provided or required to be provided under the laws of any state or the federal government, and states that such benefits shall be subtracted from the benefits otherwise payable for the injury.[7] The benefits required to be subtracted are generally dollar amounts. When § 3109(1) has heretofore been invoked, the benefits sought to be deducted generally were dollar benefits.[8] Section 3109(1) requires the subtraction of

---

[6] Id.

[7] The "required to be provided" clause and the term "subtracted" have no bearing on whether a service in kind is a "benefit" within the meaning of § 3109(1).

[8] See O'Donnell v State Farm Mutual Automobile Ins Co, 404 Mich 524; 273 NW2d 829 (1979) (social security survivors benefits); Mathis v Interstate Freight, 408 Mich 164; 289 NW2d 708 (1980) (workers' compensation benefits); LeBlanc v State Farm Mutual Automobile Ins Co, 410 Mich 173; 301 NW2d 775 (1981) (medicare benefits); Jarosz v

governmental dollar benefits from the dollar amount of no-fault benefits—governmental benefit dollars from no-fault insurer dollars.

A person injured in an automobile accident is not required under § 3109(1) to avail himself of whatever medical service in kind a governmental source may provide.[9] Governmental medical service may not be comparable in quality and service with the doctor or hospital service that the injured person purchased or may be able to purchase with the no-fault dollar. Hospitals and doctors are not fungible. There are good hospitals and some that are not, good doctors and some that are not. The Legislature did not intend that however legitimate the injured person's concern regarding the quality of the governmental service in kind—even if the medicine practiced at the hospital or the doctor is questionable, debatable, or notoriously bad—it is nevertheless a benefit as a matter of law within the meaning of § 3109(1).

The no-fault act preserves to injured persons a

*DAIIE,* 418 Mich 565; 345 NW2d 563 (1984) (social security old age benefits); *Thompson v DAIIE,* 418 Mich 610; 344 NW2d 764 (1984) (social security disability benefits received by dependents); *Gregory v Transamerica Ins Co,* 425 Mich 625; 391 NW2d 312 (1986) (amount paid pursuant to a redemption of workers' compensation benefits).

See also *Crowley v DAIIE,* 428 Mich 270; 407 NW2d 372 (1987) (amounts paid by the federal government for or medical care furnished a member of the armed forces).

[9] We express no opinion whether an injured person who has contracted for a reduced premium under § 3109a (MCL 500.3109a; MSA 24.13109[1]), and thus has voluntarily agreed that other insurance will be primary for medical benefits, may seek recovery from a no-fault insurer unless he was unable to obtain medical care from a facility designated, pursuant to the contract with the primary insurer, by the primary insurer.

Similarly, we express no opinion whether, *if* Morgan contracted for a reduced premium under § 3109a on the basis of medical benefits available through his employment by the federal government, he voluntarily agreed that such benefits would be primary and may not seek recovery from Citizens unless he was unable to obtain medical care from a facility designated by the federal government which, in that hypothesis, has or may have, in effect, become the primary insurer for the purpose of coördination under § 3109a.

reasonable choice of hospitals and physicians although this may add to the premium cost of no-fault insurance. The no-fault insurer cannot, in the name of reducing the premium cost, require an injured person to obtain medical service from a particular provider.[10]

Section 3109(1) does not mandate the offset of all governmentally provided benefits, only duplicative benefits:[11]

> The history of § 3109(1) indicates that the Legislature's intent was to require a set-off of those government benefits that *duplicated* the no-fault benefits payable because of the accident and *thereby* reduce or contain the cost of basic insurance. [*O'Donnell v State Farm Mutual Automobile Ins Co,* 404 Mich 524, 544; 273 NW2d 829 (1979). Emphasis added.][12]

It is by the offsetting of duplicative benefits that § 3109(1) "*thereby* reduce[s] or contain[s] the cost of basic insurance." (Emphasis added.) It is not within the purpose of § 3109(1) to require the offset of governmental benefits that are not duplicative.

A surgical procedure performed in a military hospital may not, because of differences in quality and service, be duplicative of the medical service that an injured person could obtain and pay for with the no-fault medical expense benefit through the exercise of the choice in medical service providers preserved to injured persons under the no-fault act.

---

[10] But see n 9 concerning § 3109a.

[11] If the injured person accepts service in kind, he cannot be heard to say that it is not a duplicative benefit.

[12] See also *Jarosz v Detroit Automobile Inter-Ins Exchange,* 418 Mich 565, 578; 345 NW2d 563 (1984); *Perez v State Farm Mutual Automobile Ins Co,* 418 Mich 634, 641; 344 NW2d 773 (1984).

III

Citizens asserts alternatively that Morgan might have obtained payment by the federal government of the cost of the medical services had he applied formally for such payment. Citizens filed with its motion for summary disposition the affidavit of a captain stating that he was familiar with Morgan's claim for medical expenses allegedly resulting from the automobile accident; that at the time of the alleged injury Morgan was in the line of duty, thereby entitling him to payment of medical expenses if he complied with all applicable Army and National Guard regulations; and that his claim for medical expenses was denied by the National Guard for two reasons: (a) nonemergency medical care in a civilian medical facility is not authorized without written or verbal authorization from the chief, National Guard Bureau, or his designee, and such authorization had not been asked for or granted; (b) medical documentation indicating that the automobile accident was the cause of the herniated disc had not been furnished.

Morgan filed an affidavit stating that he was admitted to a hospital nine months after the automobile accident and was told he needed an operation to remove a disc in his neck, that he spoke to a staff sergeant about the operation who called back later stating that the military would not pay for the operation because it was elective surgery. There was attached to the affidavit a communication from a colonel in an Army personnel center located in Virginia repeating that the request for medical claim payment was denied for the reasons stated in the affidavit of the captain filed by Citizens.

It appears that Morgan had been advised to have an operation by a physician and desired to do

so. It is unclear what would have been involved in formally requesting payment by the federal government of the medical expense incurred in having the operation performed by the surgeon Morgan chose in the nonmilitary hospital he chose. It is unclear what delays would have occurred or whether the request would have been granted. The Legislature did not impose under § 3109(1) on injured persons the burden of obtaining authorization from a governmental source before proceeding with medical treatment that the injured person has been advised by his physician is necessary.

The injured person is, however, obliged to submit a request for payment from the governmental source and provide whatever documentation may reasonably be required. The no-fault insurer has the burden of establishing that had he done so benefits would have been paid or payable.

Reversed and remanded to the circuit court for further proceedings consistent with this opinion.

CAVANAGH, ARCHER, and GRIFFIN, JJ., concurred with LEVIN, J.

BRICKLEY, J. (*dissenting*). The central issue in this case is whether the term "benefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from the [no-fault insurance benefits]" under § 3109(1)[1] of the no-fault act only applies to dollar amount benefits, or whether it also applies to services provided in kind by the government in its own hospitals.[2]

---

[1] MCL 500.3109(1); MSA 24.13109(1).

[2] I assume, as does the majority, that the plaintiff could have availed himself of the services of a military hospital, but that he declined to do so. Because I disagree with the majority that he could decline such services in a military hospital and collect the costs of those same services in a nonmilitary hospital from his insurer, I do

The lead opinion provides a somewhat contingent response to this question by stating that the purpose of § 3109(1) is to "eliminate duplicative benefits" and that

> [b]ecause of differences in quality and service, medical service provided in kind by a governmental source *may* not be duplicative of medical service obtainable in the private sector with the no-fault medical expense benefit. [Emphasis supplied. *Ante,* p 643.]

The majority adds to this the rationale that

> [t]he benefits required to be subtracted are generally dollar amounts. When § 3109(1) has heretofore been invoked, the benefits sought to be deducted generally were dollar benefits. Section 3109(1) requires the subtraction of governmental dollar benefits from the dollar amount of no-fault benefits—governmental benefit dollars from no-fault insurer dollars. [*Ante,* pp 646–647.]

In response, I find no support, in law or in logic, that a given surgical procedure in a military hospital is not "duplicative" of a similar procedure in any other medical facility in terms of the overall purpose of the no-fault act.

It is certainly true that in a military hospital, as in any medical facility, a given service may be of inferior quality, and that by not having a choice under a given government benefit program an insured may at least lose the opportunity to exer-

not find it necessary to determine whether the insured plaintiff could have collected for his services in a nonmilitary hospital from the federal government. I do point out, however, that it was not until the beginning of the lawsuit when the plaintiff was asked in a deposition whether he had made an effort to seek reimbursement from the federal government and he answered that he had not, that he subsequently made the effort and secured the response referred to by the majority.

cise discretion in an attempt to affect the quality of the chosen services. Also, although it is not the goal of the act that "the no-fault act preserves to the injured person a choice of medical service providers," the act certainly does in its effect, in most cases, leave to the insured the choice of where to take advantage of medical services. Unlike the United States military, no-fault insurers are not in the business of owning and operating large-scale medical facilities. Of course, all of this sidesteps the central issue here whether or not § 3109(1) has a different effect.

Nowhere in the no-fault act is it provided that it is the goal, purpose, or preference of the act to preserve in all instances a choice of where medical services should be provided. The majority, in a conclusory manner, merely states that "[s]ection 3109(1) does not deprive an injured person, who may be eligible to obtain service in kind in a military hospital, of such choice of medical service providers." *Ante,* p 643. This statement begs the very question we must answer in this case.

I would hold that the benefits in kind in this case are governmental benefits under § 3109(1) "provided or required to be provided" and, accordingly, can be subtracted from the defendant insurer's liability under the policy.[3]

The conclusion of the majority suggests that the Legislature, in using the words "benefits . . . under the laws of . . . the federal government" was unaware of the major sources of governmental benefits, and military hospitals in particular, a

[3] There is nothing in the record or the arguments of this case suggesting that the benefits in kind at the military hospital were below standard or objectionable. I would not discount the possibility in an appropriate case of the validity of an argument that benefits in kind were sufficiently below standard that they in effect were not benefits at all, thus making § 3109(1) inapplicable. This is not such a case.

suggestion I think is implausible. To the contrary, there can be no doubt that the Legislature intended to avoid any evasion of the opportunity to have governmental benefits fully taken advantage of to effectuate a setoff for the no-fault insurer wherever such alternate benefits existed. The best evidence of that is the language of § 3109(1) that mandates that not only "benefits provided" but that "benefits . . . required to be provided" also can be taken advantage of by the no-fault insurer. We have often in other settings discussed the legislative intent of the words "required to be provided," but we have probably never had a better example of its purpose. See *Perez v State Farm Mutual Automobile Ins Co,* 418 Mich 634; 344 NW2d 773 (1984).

It is exactly in this setting where the "benefits provided" have been declined by the insured that the additional words "required to be provided" make the difference between the insured being able to frustrate the purpose of § 3109(1) by by-passing the "benefits provided" in kind and requiring the no-fault insurer to pay for the costs the insured incurred which could have been provided under federal law. By including the term "required to be provided," the Legislature has stated that whether the benefits are taken or not, the fact that they are required to be provided is sufficient to allow the no-fault insurer to receive credit for the benefits which were available to the insured.

Furthermore, the fact that not only benefits that are provided can be "subtracted" from the no-fault benefits, but that benefits that are not provided or received but "required to be provided" can be subtracted from the no-fault insurer's benefits, forces the conclusion that "subtracted" is not intended to be confined to the interpretation offered

by the majority. See *ante,* pp 646–647. It is obvious
that "subtracted" means that the no-fault insurer
should not have to pay for what the insured did
receive or could have received. The majority inter-
pretation that "subtraction" in § 3109(1) is in this
situation confined to dollar amounts would render
the words "or required to be provided" a nullity
because the value of benefits not received, but that
could have been received, could not be set off.[4]

When the "benefits provided . . . under the laws
of any state or the federal government" are pro-
vided in kind, rather than as reimbursement for
expenses incurred, then under § 3109(1) no "sub-
traction" is required because no costs have been
incurred. Similarly, no costs having been incurred,
the no-fault carrier is also free of obligation to
reimburse. However, to allow the insured to de-
cline benefits in kind and to incur the costs of
treatment outside the "benefits provided or re-
quired to be provided by law," and then not to
allow the subtraction of those benefits would, in
my judgment, be a clear frustration of the specific
intent of § 3109(1) and the overall goal of the no-
fault automobile insurance scheme. It is the intent
of § 3109(1) that benefits provided by law be taken
advantage of to lessen the cost of no-fault insur-
ance. This effort to lower the costs of no-fault
insurance is one of the stated goals of the no-fault
insurance act generally. *Shavers v Attorney Gen-
eral,* 402 Mich 554; 267 NW2d 72 (1978); *LeBlanc v
State Farm Mutual Automobile Ins Co,* 410 Mich
173; 301 NW2d 775 (1981).

---

[4] It is my understanding that most policies do not specify dollar
benefits, but rather specify medical procedures, hospital stay, home-
care nursing, and similar descriptions of medical benefits. Because the
costs of those benefits tend to be standardized, at least when they are
being reimbursed by major carriers, "subtracting" benefits received or
required to be received, rather than dollars, from those provided by
the no-fault carrier insurance policy would not be a difficult task.

Simply stated, it would defeat the obvious intention of the Legislature to suggest that the no-fault insurer can take advantage of money received by the insured from government benefits but not service provided in kind by the government in place of money.

RILEY, C.J., concurred with BRICKLEY, J.

BOYLE, J., concurred only in the result reached by BRICKLEY, J.