685 N.W.2d 428 (2004)
262 Mich.App. 228
MICHIGAN CHIROPRACTIC COUNCIL, Michigan Chiropractic Society, Petitioners-Appellees,
v.
COMMISSIONER OF the OFFICE OF FINANCIAL AND INSURANCE SERVICE, Respondent-Appellant, and
Farmers Insurance Exchange, and Mid-Century Insurance Company, Intervenors-Respondents.
Michigan Chiropractic Council, Michigan Chiropractic Society, Petitioners-Appellees,
v.
Commissioner of the Office of Financial and Insurance Service, Respondent, and
Farmers Insurance Exchange, and Mid-Century Insurance Company, Intervenors-Respondents-Appellants.
Docket Nos. 241870, 241874.
Court of Appeals of Michigan.
Submitted January 20, 2004, at Lansing.
Decided June 1, 2004, at 9:15 a.m.
Released for Publication August 5, 2004.
*430 Miller, Canfield, Paddock & Stone, PLC (by Kevin J. Moody, Polly Ann Synk, and Jaclyn Shoshana Levine), Lansing, for Michigan Chiropractic Council and Michigan Chiropractic Society.
Michael A. Cox, Attorney General, Thomas L. Casey, Solicitor General, and William A. Chenoweth, Assistant Attorney General, for Commissioner of the Office of Financial and Insurance Service.
Warner Norcross & Judd, LLP (by Peter L. Gustafson and Jeffrey O. Birkhold), Grand Rapids, for Farmers Insurance Exchange and Mid-Century Insurance Company.
Sinas, Dramis, Brake, Boughton & McIntyre, P.C. (by George T. Sinas and L. Page Graves), Lansing, for Brain Injury Association of Michigan, Michigan Brain Injury Providers Council, and Michigan Orthotics & Prosthetics Association.
John P. Jacobs, P.C. (by John P. Jacobs), Detroit, for ManageAbility, Inc.
Kerr, Russell and Weber, PLC (by Richard D. Weber and Joanne Geha Swanson), Detroit, for Michigan State Medical Society.
Willingham & Cote, P.C. (by John A. Yeager), East Lansing, for Insurance Institute of Michigan.
Before: FITZGERALD, P.J., and NEFF and WHITE, JJ.
NEFF, J.
In these consolidated appeals, respondent Commissioner of the Office of Financial and Insurance Services, and intervenors-respondents Farmers Insurance Exchange and Mid-Century Insurance Company (Farmers) appeal by leave granted an order of the circuit court that *431 reversed the commissioner's denial of petitioners' challenge to a preferred provider organization (PPO) option offered in Farmers' no fault automobile insurance policies. The circuit court concluded that Farmers' PPO option violated the no-fault statute, MCL 500.3101 et seq., by illegally adding an additional requirement that health care providers be members of Farmers' exclusive Preferred Providers of Michigan (PPOM) network. We affirm.

I
This case presents an issue of first impression. The essential question is whether Farmers' implementation of a PPO endorsement option within its Michigan no-fault automobile insurance policies, by which policyholders receive a reduction in their personal injury protection (PIP) premium in exchange for agreeing to obtain medical treatment exclusively from providers in Farmers' PPO network, violates Michigan's no-fault insurance statute. We concur in the circuit court's conclusion that the PPO endorsement inherently conflicts with Michigan's no fault insurance scheme, which was enacted as a fee-for-service system with regard to medical benefits. We therefore find no error in the circuit court's reversal of the commissioner's decision to permit Farmers' no-fault PPO endorsement.

II
The parties disagree on the standard of review. Their dispute is essentially resolved by this Court's explication of the standard of review applicable to a decision of the commissioner that is not based on an evidentiary hearing, i.e., that is not a contested case. Northwestern Nat'l Cas. Co. v. Comm'r of Ins., 231 Mich.App. 483, 487-491, 586 N.W.2d 563 (1998); see also LeDuc, Michigan Administrative Law, §8:08, p. 564, §9:02, p. 601, § 9:05, pp. 608-609. Judicial review in this instance is limited in scope to whether the action of the agency was "authorized by law." Northwestern Nat'l Cas, supra at 488, 586 N.W.2d 563. An agency's decision is not authorized by law if it violates a statute or the Constitution, exceeds the statutory authority or jurisdiction of the agency, is based on unlawful procedures resulting in material prejudice, or is arbitrary and capricious. Id.
Whether an agency decision violates a statute or the Constitution is a question of law to be decided by the courts, and the principles of statutory construction are relevant. LeDuc, §9:19, p. 636. The courts generally accord deference to an agency's interpretation of a statute in view of the agency's substantial expertise and unique role in regard to the statute at issue unless that interpretation is clearly wrong. Id. at 636-638, 586 N.W.2d 563; Taylor v. Second Injury Fund, 234 Mich.App. 1, 13, 592 N.W.2d 103 (1999); see also Consumers Power Co. v. Pub. Service Comm., 460 Mich. 148, 173-175, 596 N.W.2d 126 (1999) (Brickley, J., dissenting) (noting the varying deference accorded agency interpretation of statutes). Nonetheless, an administrative interpretation is not binding on the courts and must be rejected if not in accord with the intent of the Legislature. Lanzo Constr. Co., Inc. v. Dep't of Labor, 86 Mich.App. 408, 414, 272 N.W.2d 662 (1978). "[D]eference is given to an administrative agency's decisions, provided that the agency's construction is consistent with the purpose and policies of the statute itself." Empire Iron Mining Partnership v. Orhanen, 455 Mich. 410, 416, 565 N.W.2d 844 (1997).

III
This case has its genesis in the commissioner's tacit approval of Farmers' *432 PPO option policy as a new no-fault insurance product in Michigan effective in July 2000, pursuant to MCL 500.2236. The Legislature granted the commissioner the power to approve insurance forms before they are used. American Community Mut. Ins. Co. v. Comm'r of Ins., 195 Mich.App. 351, 357, 491 N.W.2d 597 (1992). Under MCL 500.2236(1), the commissioner has a duty to determine that all the statutory requirements of the no-fault act are complied with in insurance policies. Cruz v. State Farm Mut. Automobile Ins. Co., 466 Mich. 588, 599 n. 15, 648 N.W.2d 591 (2002).
MCL 500.2236 provides in relevant part:[1]
A basic insurance policy form ... shall not be issued or delivered to any person in this state, and an insurance ... application form if a written application is required and is to be made a part of the policy or contract, a printed rider or indorsement form or form of renewal certificate, and a group certificate in connection with the policy or contract, shall not be issued or delivered to a person in this state, until a copy of the form is filed with the insurance bureau and approved by the commissioner as conforming with the requirements of this act and not inconsistent with the law. Failure of the commissioner to act within 30 days after submittal constitutes approval.... [MCL 500.2236(1).]
The statute requires form approval by the commissioner to protect the public from clauses that mislead, deceive, or unreasonably deny coverage. American Community Mut Ins, supra at 358, 491 N.W.2d 597; Progressive Mut. Ins. Co. v. Taylor, 35 Mich.App. 633, 642, 193 N.W.2d 54 (1971). In this case, the commissioner did not act on the policy form submitted by Farmers and, consequently, Farmers' new PPO option was automatically approved after thirty days. MCL 500.2236(1).
In August 2000, petitioners filed a request for issuance of a notice of hearing and commencement of administrative proceedings with the commissioner pursuant to MCL 500.2029 and MCL 500.2236. Petitioners alleged that Farmers' offer or imposition of a managed care[2] network was unlawful under the no-fault act because there is no authority under the act for implementing a managed care scheme. Petitioners sought commencement of a Chapter 20[3] proceeding against Farmers for unfair, deceptive, and misleading trade practices pursuant to § 2029 and issuance of a notice of disapproval by the commissioner pursuant to § 2236.
Under the Insurance Code, the commissioner has the power, upon probable cause, to investigate the affairs of a person engaged in the insurance business in Michigan.[4] MCL 500.2028. Pursuant to MCL *433 500.2029, the commissioner may conduct a hearing when there is probable cause to believe that an insurer is engaged in unfair or deceptive practices:
When the commissioner has probable cause to believe that a person engaged in the business of insurance has been engaged or is engaging in this state in an unfair method of competition, or an unfair or deceptive act or practice in the conduct of his business, as prohibited by sections 2001 to 2050 [MCL 500.2001 to MCL 500.2050], and that a hearing by the commissioner in respect thereto would be in the interest of the public, he shall first give notice in writing ... to the person involved, setting forth the general nature of the complaint against him and the proceedings contemplated pursuant to sections 2001 to 2050....
MCL 500.2236(5) provides for the commissioner's withdrawal of approval of an insurance form:
Upon written notice to the insurer, the commissioner may disapprove, withdraw approval or prohibit the issuance, advertising, or delivery of any form to any person in this state if it violates any provisions of this act, or contains inconsistent, ambiguous, or misleading clauses, or contains exceptions and conditions that unreasonably or deceptively affect the risk purported to be assumed in the general coverage of the policy....
The commissioner denied petitioners' request for a contested hearing, finding that they had failed to show probable cause to support their request. The commissioner also concluded that Farmers' PPO option did not violate the Insurance Code.
Petitioners sought review of the commissioner's decision in the circuit court. Following a hearing, the court reversed the commissioner's decision, finding that Farmers' PPO option is not authorized by law. The court agreed with petitioners that the authority to incorporate managed care into the no-fault system is a matter for the Legislature to decide. We concur in these conclusions and affirm the decision of the circuit court on that basis.

IV
The no-fault act[5] was enacted by the Legislature in 1972 as a comprehensive scheme of compensation designed to provide sure and speedy recovery of certain economic losses resulting from motor vehicle accidents. Spencer v. Citizens Ins. Co., 239 Mich.App. 291, 300, 608 N.W.2d 113 (2000). The act radically redefined the nature of Michigan's motor vehicle insurance. Cruz, supra at 595-596, 648 N.W.2d 591; Shavers v. Kelley, 402 Mich. 554, 590, 267 N.W.2d 72 (1978).
The Michigan No-Fault Insurance Act, which became law on October 1, 1973, was offered as an innovative social and legal response to the long payment delays, inequitable payment structure, and high legal costs inherent in the tort (or "fault") liability system. The goal of the no-fault insurance system was to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses. The Legislature believed this goal could be most effectively achieved through a system of compulsory insurance, whereby every Michigan motorist would be required to purchase no-fault insurance or be unable to operate a motor vehicle *434 legally in this state. Under this system, victims of motor vehicle accidents would receive insurance benefits for their injuries as a substitute for their common-law remedy in tort. [Id. at 578-579, 267 N.W.2d 72.]
Under the no-fault act, PIP insurance is based on a comprehensive and expeditious benefit system. Id. at 579, 267 N.W.2d 72.
In general, personal injury protection insurance under the act provides:
(a) all medical costs and expenses occasioned by injuries sustained in a motor vehicle accident, including expenses for rehabilitation.... [Id. at 620, 267 N.W.2d 72, citing § 3107.]
Despite their comprehensive nature, the statutory provisions mandating medical benefits are brief and concise. Section 3105 of the act provides that, subject to the other provisions of the act, "an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle...." MCL 500.3105(1); Sprague v. Farmers Ins. Exch., 251 Mich.App. 260, 266, 650 N.W.2d 374 (2002). The specific requirements for medical benefits are governed by MCL 500.3107 and MCL 500.3157. Subsection 3107(1)(a) sets forth the type of benefits a no-fault insurer is liable for under § 3105. Section 3157 details the allowable provider charges. Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n, 257 Mich.App. 365, 373-374, 670 N.W.2d 569 (2003).
MCL 500.3107 provides in pertinent part:
(1) Except as provided in subsection (2), personal protection insurance benefits are payable for the following:
(a) Allowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation.
MCL 500.3157 provides:
A physician, hospital, clinic or other person or institution lawfully rendering treatment to an injured person for an accidental bodily injury covered by personal protection insurance, and a person or institution providing rehabilitative occupational training following the injury, may charge a reasonable amount for the products, services and accommodations rendered. The charge shall not exceed the amount the person or institution customarily charges for like products, services and accommodations in cases not involving insurance.
It is undisputed that the no-fault act is silent on the issue of managed care medical benefits. The parties take opposing positions on the legal implication of this lack of an explicit pronouncement on managed care by the Legislature. Petitioners argue that there is no statutory authority for the PPO endorsement and it is therefore illegal. Farmers argues that the no-fault act does not proscribe a PPO option and therefore it does not violate the statute because it meets the statutory requirements for no-fault medical benefits, i.e., reimbursement of all reasonable charges for reasonably necessary products, services, and accommodations. MCL 500.3107.
The no-fault act's silence with regard to a particular matter does not necessarily preclude its use. Cruz, supra at 598, 648 N.W.2d 591. An insurer's provision that facilitates the goals of the act and is harmonious with the Legislature's no-fault insurance regime is valid. Id. Conversely, a provision that is not in harmony with the no-fault scheme established by the Legislature must be rejected. Id.

*435 A
The PPO endorsement to Farmers' no-fault insurance policies states:
(c) Preferred Provider Option Endorsement 
Policyholders who elect the Preferred Provider Endorsement will receive a 40% reduction on their PIP rate. The endorsement requires the insured to choose a physician from our captured network, Preferred Providers of Michigan, to manage health care in the event of a covered injury.
The E7143 will not be allowed if the option is selected. The other insurance credit will not be allowed if this option is selected.
All policies in the household are required to carry the PPO option if the insured selects this option. Disclosure form 51-0693 must be signed by the insured for each policy in the household to verify selection of the PPO option.
The E7143 referenced in the PPO option is a PIP rate reduction offered for a $300 deductible:[6]
(a) $300 Deductible P.I.P. (E-7143) 
Policyholders who elect to take the "Endorsement Establishing Deductible and Waiting Period" will receive a 15% reduction from the P.I.P. rates. The endorsement provides a $300 medical deductible and a 7 day waiting period on benefits for "work loss". (Not available if the other insurance rate credit is taken.)
The "other insurance credit" referenced in the PPO option states:[7]
(b) Other Insurance Rate Credit 
P.I.P. rates are discounted 25% if the insured elects their [sic] P.I.P. coverage to be secondary over other A & H medical insurance or another 10% if he elects his weekly indemnity coverage to be secondary to other wage continuation coverage. Thirty Five percent (35%) will be deducted if both coverages are secondary.
These credits are applied to the reduced rate after other credits such as second car discount, etc., have been applied.
If this option is selected, the $300 deductible credit under the E-7143 described in (a) above will not be allowed.
Thus, under Farmers' policies, if a policyholder elects the PPO option, the policyholder forfeits other PIP premium deductions. This "exchange system" of premium discounts renders illusory the touted reduction in the cost of insurance to policyholders. The question arises whether consumers, who are prone to overlook the details of their insurance policies, will be lured to accept the PPO option on the basis of the well-publicized forty-percent reduction in their PIP rate, when in fact many will lose significant, and perhaps comparable, premium discounts for the other insurance option or the E-7143, already in place, but which would no longer apply. This system certainly has the potential for deception  misleading consumers and the public in general. This potential deception provides further basis for reversing the commissioner's decision pursuant to MCL 500.2029, on the basis of unfair, deceptive, and misleading trade practices.

*436 B
Farmers imposes penalties if a policyholder selects the PPO option, but subsequently goes out of network:
[I]f a policyholder elects to go out of network for care, they [sic] will be required to pay:
 a $500 deductible (which is not applicable to those who stay in network for care)
 any charges by the provider beyond which would have been reimbursed according to the carriers' usual and customary fee schedule.
While the Michigan Supreme Court has sanctioned managed care under the no-fault act, this sanction relates only to managed care under health care plans, which only come into play under the no-fault statutory provisions for coordinated benefits, MCL 500.3109a.[8]Tousignant v. Allstate Ins. Co., 444 Mich. 301, 506 N.W.2d 844 (1993). Section 3109a requires insurers to offer reduced premiums for coordinating no-fault benefits with health and accident coverage. Sprague, supra at 267, 650 N.W.2d 374.
In Tousignant, the Supreme Court held that a no-fault insurer is not liable for medical expenses that the insured's coordinated health care insurer is contractually required to pay for or provide.[9]Tousignant, supra at 303, 506 N.W.2d 844. The Court reasoned that the legislative purpose underlying § 3109a was one of avoiding duplicative payment, which required that an insured who chooses to coordinate coverage must obtain payment and services from the health insurer to the extent of the health coverage available. Id. at 306-308, 506 N.W.2d 844.
Under § 3109a, insurers are required to offer benefits coordination with health and accident coverage at appropriately reduced automobile insurance premium rates. Tousignant, supra at 304, 307, 506 N.W.2d 844; Sprague, supra at 267-268, 650 N.W.2d 374. Coordination is optional. Tousignant, supra at 307, 506 N.W.2d 844. Insureds who coordinate are deemed to have made the health insurer the "primary" insurer with respect to automobile accident injuries. Id. However, a no-fault insured who desires duplicative medical coverage from no-fault and health insurers can forgo the premium reduction for coordination and thus contract for dual coverage. Id.
In Tousignant, the no-fault claimant had coordinated coverage under a managed care health maintenance organization (HMO) provided through her employer, which as the PPO in this case, required that treatment be obtained from designated physicians or facilities. Id. at 304-305, 309, 506 N.W.2d 844. The Court recognized that a no-fault insured generally has a wide choice of physicians and facilities. Id. at 309, 506 N.W.2d 844. The Court noted, however, that § 3109a did not require that "other health coverage" with which the insured chose to coordinate, provide such a choice. Id. at 309, 506 N.W.2d 844. Further, "the legislative policy embodied in § 3107, requiring a no-fault insurer to provide necessary medical expense, [did not] require that `other health coverage' under § 3109a provide the no-fault *437 insured with a choice of physician or facility." Id. at 309-310, 506 N.W.2d 844.
Managed care under the coordinated health and accident coverage of § 3109a is clearly distinguishable in concept from the general no-fault medical benefits under subsection 3107(1)(a), as are the legislative purposes underlying these provisions. General no-fault benefits under subsection 3107(1)(a) offer a range of choice. Managed care, under a PPO plan, offers only limited choice. The substitution of a PPO plan for no-fault general medical benefits is therefore not in keeping with the no-fault act.
Although our courts have sanctioned managed care under § 3109a health care plans, where the managed care does not meet the broader requirements of § 3107, an insurer remains liable for all reasonably necessary services pursuant to § 3107. Recently, in Sprague, supra, this Court held that where HMO coordinated coverage under § 3109a excluded coverage for chiropractic services, the no-fault insurer was liable for the chiropractic expenses to the extent that the plaintiff could show that they represent reasonable charges incurred for reasonably necessary services, subsection 3107(1)(a). Id. at 265, 270-271, 650 N.W.2d 374.
A similar result has been reached where other statutory mandates restrict access to the benefits in § 3107. In enacting the no-fault scheme, the Legislature provided for a setoff of government benefits that duplicate no-fault benefits to reduce and contain the cost of basic insurance. MCL 500.3109(1); Morgan v. Citizens Ins. Co. of America, 432 Mich. 640, 648, 442 N.W.2d 626 (1989). Where government benefits under subsection 3109(1) fall short of the § 3107 requirement of "reasonably necessary" services, because of differences in quality and service, the requirements of § 3107 apply. Id. at 643, 648, 442 N.W.2d 626; MCL 500.3107(1)(a). The Morgan Court held that the no-fault claimant could be entitled to treatment at a nonmilitary hospital because subsection 3109(1) does not mandate the offset of all governmentally provided benefits, only duplicative benefits:
The no-fault act preserves to injured persons a reasonable choice of hospitals and physicians although this may add to the premium cost of no-fault insurance. The no-fault insurer cannot, in the name of reducing the premium cost, require an injured person to obtain medical service from a particular provider. [Id. at 647-648, 442 N.W.2d 626.][10]
The fact that the Legislature expressly provided for reduced premiums in § 3109a with regard to coordinated health-care benefits, and also provided for the offset of duplicative government benefits and reduced premium rates for deductibles under § 3109, further supports a conclusion that the Legislature did not intend premium reductions with regard to benefit limitation options under § 3107. Under the rules of statutory construction, provisions of a statute must be read in the context of the entire statute so as to produce an harmonious and consistent whole. Cherry Growers, Inc. v. Michigan Processing Apple Growers, Inc., 240 Mich.App. 153, 170, 610 N.W.2d 613 (2000). "The omission of a provision in one part of a statute, which is included elsewhere in the statute, should be construed as intentional." Id.
"The most striking feature of Michigan's no-fault system is that, apparently alone among the no-fault states, it provides unlimited *438 lifetime medical and rehabilitation benefits." House Legislative Analysis, HB 4156, July 29, 1993, p. 1. "The no-fault act preserves to the injured person a choice of medical service providers." Morgan, supra at 643, 442 N.W.2d 626; see also Tousignant, supra at 309, 506 N.W.2d 844. On the contrary, inherent in the concept of managed care is limited choice.
Michigan's no-fault insurance system has at its core the premise  and the promise  of wide ranging medical benefits from the available spectrum of providers, in exchange for which the driving public accepts the statutorily prescribed, limited redress for personal injuries suffered. Farmers' PPO endorsement strikes a new and entirely different bargain with policyholders, one for which there are no legislative prescriptions. The fact that, absent such prescriptions, Farmers has modeled its offered option after the statutory prescriptions for reduced premiums for optional coordinated health care, § 3109a,[11] while laudable, is nonetheless essential proof that premium reductions for limited no-fault medical benefits under § 3107 were not within the Legislature's intent in enacting the no-fault act. Where the Legislature contemplated limitations on § 3107 benefits, associated statutory requirements are provided in the act, not left to the insurers' devise.
Further, Farmers' PPO option carries with it severe penalty provisions, imposed when a no-fault claimant acquires out-of-network services despite the policyholder's agreement to the PPO endorsement. These penalties clash with no-fault precepts, and further convince us that the endorsement must be rejected as inharmonious with the no-fault regime established by the Legislature. Cruz, supra at 595-596, 598, 648 N.W.2d 591.
Managed care, and in particular, the PPO option at issue, fundamentally alters the essential premise of Michigan no-fault insurance and is inconsistent with the no-fault act general benefit provisions. Incorporating managed care into the no-fault scheme, however beneficial or desirable from a policy standpoint, cannot emanate from the innovations of insurance companies or the courts, but only from the Legislature itself.[12]
*439 Managed care, in the form of a limited provider network, clearly was not contemplated in the no-fault range of choice system for medical benefits prescribed under § 3107. Farmers' system of PPO-limited medical benefits inherently conflicts with Michigan's no-fault act. Because the PPO endorsement at issue is inconsistent with the act, the commissioner was obligated to withdraw approval of the policy form incorporating the endorsement, pursuant to MCL 500.2236. The circuit court's reversal of the commissioner's decision was therefore not error.
Affirmed.
FITZGERALD, P.J., concurred.
WHITE, J. (concurring).
I join in the majority opinion, except Section IV(A).[1] I write separately to make some additional observations.
The managed-care option at issue here is not expressly provided for by the no-fault act, MCL 500.3101 et seq. Thus, it is permissible and enforceable if it does not reduce the coverage required by the act, and is impermissible and unenforceable if it does. Cruz v. State Farm Mut. Automobile Ins. Co., 466 Mich. 588, 648 N.W.2d 591 (2002).
Defendants argue that the managed-care option does not reduce the coverage mandated by § 3107 because, through the managed system, all reasonable charges incurred for reasonably necessary products, services, and accommodations for an injured person's care, recovery, or rehabilitation are covered. Acknowledging that this action was brought by provider groups, the dispositive inquiry in determining whether the endorsement violates the act is whether its enforcement results in the insured receiving less than the statutorily mandated coverage. Under the endorsement, the insured only receives the full benefits mandated by the act if services are obtained from a managed-care provider. If the insured, or a member of the insured's household, is injured and seeks a service from a provider that is not part of the managed-care network, a deductible that exceeds the amount permitted under the statute is incurred, and the amount to be paid for the reasonably necessary service will not be the reasonable charge, as required by statute, but the amount under the carrier's usual and customary fee schedule. Stated differently, while the endorsement may provide the required coverage if the insured goes to a managed-care provider, it clearly does not provide the required coverage if the insured does not go to such a provider. This is a violation of the no-fault act.
Defendants argue that the no-fault system contemplates that the insured will have a free choice of providers, and that this aspect of the act is not violated because all that is done here is that the choice is made when the insurance contract is entered into, i.e., the insured agrees at that time that the insured will only seek services from certain providers. The insurer and the insured may agree to anything that does not reduce the coverage provided by the act. If the insured chooses to restrict his or her options in exchange for a premium reduction, and then after injury honors that choice, the statute is satisfied. However, if the insured chooses to seek reasonable services for a reasonable charge from a provider that is not part of the managed-care network, and the insurer does not pay that charge, the no-fault statute has been violated. Thus, I conclude that the penalty provisions of the endorsement are illegal and unenforceable, and the commissioner *440 should have withdrawn its approval. It is a separate question, not presented here, whether the endorsement would be valid if compliance after injury were voluntary on the part of the insured.
I also observe that in mandating that coordinated coverage be offered under the no-fault act, the Legislature acted against the backdrop of a regulated health insurance/managed health-care industry. The laws pertaining to that industry evince a careful legislative balancing of the sometimes conflicting interests of the insurers and plans, the health-care providers, and the health-care recipients. No such legislative controls are present here. An insured does not become a Preferred Providers of Michigan network participant by choosing the preferred provider organization endorsement.
NOTES
[1] Minor changes in § 2236 were effected by 2002 PA 664 but do not bear on the analysis in this case.
[2] "Managed care encompasses a variety of health-care delivery forms including HMOs, PPOs, individual practice associations, as well as other prepaid health plans." Gilchrist, Managed care takes to the highway: implication for insureds, 29 Journal of Law, Medicine & Ethics (JLMEDETH) 203, 207 (2001). Managed care represents a shift from the traditional fee-for-service payment arrangements for health-care costs. Id. at 203, 206. According to the Gilchrist article, four state legislatures and one commissioner of insurance (Massachusetts) to date had authorized insurance companies to offer consumers a managed care option in automobile insurance policies. Id. at 203-205.
[3] Chapter 20 provides recourse for unfair and prohibited trade practices and frauds.
[4] MCL 500.2028 provides: "Upon probable cause, the commissioner shall have power to examine and investigate into the affairs of a person engaged in the business of insurance in this state to determine whether the person has been or is engaged in any unfair method of competition or in any unfair or deceptive act or practice prohibited by sections 2001 to 2050 [MCL 500.2001 to MCL 500.2050]."
[5] 1972 PA 294.
[6] Under subsection 3109(3) of the no-fault act, "[a]n insurer providing personal protection insurance benefits may offer, at appropriately reduced premium rates, a deductible of a specified dollar amount which does not exceed $300.00 per accident."
[7] The "other insurance credit" is presumably offered pursuant to § 3109a, the no-fault act's coordination of benefits provision. Sprague, supra at 267, 650 N.W.2d 374.
[8] Effective June 3, 1974, the Legislature amended the no-fault act by adding § 3109a. 1974 PA 72; Porter v. Michigan Mut. Liability Co., 80 Mich.App. 145, 150 n. 6, 263 N.W.2d 318 (1977).
[9] Tousignant did not address issues that might arise where a health insurer fails to pay or reimburse an insured for an expense, or in the case of a health insurer who is also a provider, fails to provide medical care. Tousignant, supra at 303, n. 2, 506 N.W.2d 844.
[10] The Court noted that its holding was limited to coordination of governmental benefits and that it expressed no opinion concerning the situation where a claimant's health insurance was primary pursuant to § 3109a. Morgan, supra at 647 n. 9, 442 N.W.2d 626.
[11] Section 3109a provides that an insurer shall offer premium reductions for coordinated health coverage and that the deductibles and exclusions required to be offered shall apply only to benefits payable to the person named in the policy, the spouse of the insured, and any relative of either domiciled in the same household. Farmers' PPO endorsement provides that policyholders who elect the endorsement will receive a forty percent reduction in their PIP rate and that all policies in the household are required to carry the PPO option.
[12] In light of our resolution, we do not address the remaining issues and arguments of the parties. However, we note that petitioners' argument that pursuant to § 3157 providers are entitled to reimbursement of "reasonable amounts customarily charged for their services" fails in light of the recent decision in Advocacy Organization, supra. The statutory language in § 3157, referring to the amount the provider "customarily charges," is simply a cap on the amount health-care providers can charge. Id. at 374, 377, 670 N.W.2d 569. Providers therefore have no entitlement to be reimbursed their customary charges. Further, we reject any argument that the enactment or subsequent repeal by referendum vote of 1993 PA 143 is determinative in this case. That legislation made comprehensive changes to Michigan's no-fault insurance scheme. Because the referendum rejected the act in its entirety, it has little bearing on the disposition of this case. At most, it is arguable that the Legislature's substitution of the phrase "medically appropriate" services in Public Act 143 for the phrase "reasonably necessary" services in § 3107 of the existing act further supports the conclusion that the latter phrase is incongruent with managed care concepts.
[1] I do not find it necessary to reach the issue addressed in that section.